## TEXAS EMPLOYERS' INS. ASS'N v. LOVETT et al. (No. 7368.)

Court of Civil Appeals of Texas. Austin.
June 19, 1929.

Rehearing Denied July 17, 1929.

Wood & Wood, of Austin, for appellant. S. L. Staples and Harris & Harris, all of Austin, for appellees.

BLAIR, J. This is a workmen's compensation case. G. W. Lovett died from an injury received in the course of his employment as manager of Farmers' & Ginners' Cotton Oil Company, the subscriber, under appellant's insurance policy in suit. Appellees, the widow and minor daughter of deceased and their attorney, S. L. Staples, were awarded weekly compensation by the Industrial Accident Board. Appellant duly removed the case to the district court seeking to set aside the award; but on trial the verdict and judgment were for appellees for the lump sum of $2,951.37, apportioned equally between them; hence this appeal.

Appellant contends that the court was without jurisdiction to determine the case, because appellees neither alleged nor proved that notice of the injury was given to the association or subscriber within 30 days, nor that claim for compensation was filed with the Industrial Accident Board within six months after the death of the employee, as required by article 8307, Rev. St. 1925. Neither contention is sustained.

The provision with reference to giving notice of the injury within 30 days has no application "in case of death of the employee." This conclusion is not only sustained by the language of the statute, but also by the fact that the heirs or legal representatives have no claim for compensation until the death of the employee, which might not occur within 30 days after the injury. Georgia Casualty Co. v. Ward (Tex. Civ. App.) 220 S. W. 380.

With reference to the sufficiency of the pleadings, appellees alleged in substance that deceased received an injury in the course of his employment which resulted in his death; that notice of his death was given to the association and subscriber, and a claim for compensation filed with the Industrial Accident Board, "within the time and in the manner required by law"; that the board

made an award in favor of appellees; and that appellant appealed, seeking to set aside the award. Appellant made no attack upon these pleadings. It filed a general demurrer which does not appear to have been presented to, or acted upon, by the trial court. Therefore the question of the sufficiency of the pleadings in the respect complained of is not raised. But should the question of jurisdiction be regarded as fundamental, and, conceding for the purposes of this decision that appellees' allegation that they gave notice of "the death" instead of "notice of the injury" is insufficient standing alone, still this case does not fail because of the allegations contained in appellant's petition.

In its petition to set aside the award, appellant alleged all jurisdictional facts, with the further allegation that appellees claimed compensation before the board. When these allegations are considered with the allegations of appellees that they claimed and were awarded compensation by the board, they are broad enough as against a general demurrer to show compliance with the statute with respect to notice and filing of claim. Or, as stated by the Commission of Appeals in the case of Davies v. Tex. Employers' Ins. Ass'n, 16 S.W.(2d) 525:

"Upon a general demurrer, the allegations of the adversary party may be looked to in aid of the pleading attacked. The allegation that Davies claimed compensation before the board by reasonable intendment means that he claimed compensation in a lawful manner; that is, in the manner required by statute. This could only be after notice, and upon claim duly presented to the board within the statutory time, or for good cause a waiver by the board of those requirements."

We also note in this connection that in the Davies Case the commission indicates that the requirements as to notice of injury and filing of claim may no longer be regarded as jurisdictional; but that they "are merely statutes of limitations, to be pleaded in defense."

The proof is also sufficient to sustain the judgment on the issue of notice and filing of claim. Appellees offered in evidence their claim for compensation filed with the Industrial Accident Board duly authenticated by the secretary of the board. It shows to have been filed within six months after the death of the employee. The final award of the board was also introduced in evidence. Mrs. Lovett testified without contradiction that in February, 1928, following the death of her husband October 14, 1927, which was also the day he received the injury, appellant's agent and the manager of the subscriber interviewed her with reference to the death of her husband, which was within six months after the death of the employee. This shows knowledge of the injury and death on the part of both the association and subscriber, and under provision of the stat-

ute where either the association or subscriber has notice of the injury no further notice is necessary.

Appellant further contends that the evidence wholly fails to show that G. W. Lovett received such an injury while in the course of his employment as is compensable under the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), in that no harm or damage was shown to have been done to "any portion of the physical structure of the body of said G. W. Lovett." We do not sustain the contention.

G. W. Lovett was shown to have been afflicted for several years prior to his death with an organic heart disease, known in medical terms as "angina pectoris," which disease and its effect were described by an expert witness as follows:

"Angina is a sclerosis of the heart and the passage of the aorta; in other words, a diseased condition has entered into that heart and also into that passage, that has produced a hardening and in those conditions you produce a line of restriction—a narrowing. When you throw into that heart pressure, dilatation is not there, but you carry the response, and consequently the interpretation is passed to the nerve coming from the cardiac branch of the vagus nerve. * * * You find that pressure comes not only from physical exertion, but also you find death even following a reflex of temper or things like that."

Now the evidence shows that about the middle of the afternoon of October 14, 1927, deceased's son had a bale of cotton ginned, and attempted to get his wagon under the seed box for the purpose of getting his seed. His team shied and the wagon went too far, whereupon deceased, in the course of his employment as manager of the gin, tried to help get the wagon back by taking hold of the rear wheel and exerting his physical strength to roll the wagon, but, failing in this method, he went around to the front and pulled down on the tongue, which the mules had elevated to considerable height in their effort to back the wagon. While deceased was pulling down on the wagon tongue, the mules shied and swung and jerked deceased to one side, but the wagon was thus moved in position. Deceased then went to his office, which was near by. In about two minutes thereafter the son went to the office for his ticket, and found his father wiping his hair and forehead, and complaining of a pain in his chest. Deceased then went a short distance to a store, and took some soda, complaining that he had colic, or a recurrence of his old indigestion trouble. To others on his return to the gin he still complained of the pain in the chest, and suggested that it might be caused from dust from the gin. He was then taken to his home, still complaining of the pain in his chest and of choking. He died in a few minutes after reaching his house and within two or three hours after helping get the wagon under the seed box and being jerked by the team.

Deceased was 49 years of age, and had been in apparent good health and without pain of any character until after he exerted himself by helping get the wagon under the seed box.

Expert witnesses testified, in answer to hypothetical questions based in substance upon the above facts, that in their opinion deceased died of angina pectoris precipitated by overexertion in connection with helping place the wagon under the seed box. One of them testified as follows: .

"I believe this man had angina. Some of these cases give a history of previous attacks very frequently from an indigestion standpoint. We speak of it as indigestion simply because when you eat anything the food goes to the bowels for digestion; that brings congestion of the other parts and you get congestion of the heart. Therefore, frequently treating these cases of angina gives you a history of disturbance across the chest, especially on the right side and radiating down from the arm and possibly a little lower down. There was a condition there existing. That condition undisturbed may have gone on indefinitely, or no telling how long. That, with the other condition grafted on it, is what precipitated it. This additional strain, in my opinion, precipitated and caused death. * * * That heart was carrying all it could carry, normally speaking, just as if you had a Ford car and one wheel was weak and you knew it was weak; if you should load it recklessly you could expect a break somewhere, and if you load recklessly a heart that is carrying all it can carry it will break also. It is just a practical question. In those symptoms we would have had a rupture of a blood vessel, which means traumatism or means an injury, just the same, any way you come at it. It shows that the violence he was subjected to was the straw that made the break. * * *"

Another doctor who was called shortly after deceased's death testified as follows:

"Taking the same facts, a man taking hold of a wheel as detailed and the wheel spinning and then his going around and taking hold of the tongue of the wagon, when the mules shied and flung him to one side, and he suffered pain up to 5 o'clock, in my opinion that would be reasonably calculated to produce death. * * * There were several doctors there at the time of his death, and we thought he died of an angina pectoris. * * * As to what the symptoms in this case indicated, I think the attack was precipitated or brought on by the exertion, and, while sort of indirect, it was just as real as if he had been hit on the side of the head; it would have an effect on his heart."

■■ Under this evidence the jury could have reasonably found as they did find that

G. W. Lovett died as the result of an injury to the physical structure of his body, received in the course of his employment. The evidence certainly establishes a causal connection between the injury and the death of the employee, which is the test in workmen compensation cases. Travelers' Ins. Co. v. Peters (Tex. Com. App.) 14 S.W.(2d) 1007.

Appellant contends the judgment should be reversed because the hypothetical questions propounded the experts assume facts not in evidence. The particular complaint is the question assumed that the deceased "wiped perspiration off his forehead," whereas the facts testified to were that he "wiped his hair," or "wiped his forehead"; the word "perspiration" not being used by the witness. The contention is not sustained. The only reasonable deduction to be drawn from the evidence of the witness that his father "wiped his hair," or "wiped his forehead," while suffering great pain, holding his head in his hands, and complaining of pain in the chest, is that he wiped perspiration from his hair or forehead. The rule is settled that hypothetical questions put to expert witnesses may assume any facts which the evidence fairly tends to prove, though they may not be clearly proved. Liner v. U. S. Torpedo Co. (Tex. Com. App.) 12 S.W. (2d) 552; Malley v. Indemnity Co. (Tex. Com. App.) 12 S.W.(2d) 1002; I. & G. N. R. R. Co. v. Mills, 34 Tex. Civ. App. 127, 18 S. W. 11 (error refused); Collins v. Chipman, 41 Tex. Civ. App. 563, 95 S. W. 666 (error refused).

The court submitted, over appellant's objection that there was no evidence to sustain an affirmative finding, the following special issue:

"Would a failure on the part of the Texas Employers' Insurance Association to pay in a lump sum to the defendants any compensation which they may recover work a manifest hardship and injustice on said defendants?"

The jury answered the issue "Yes." As concerns, Mrs. Lovett, the evidence is sufficient to sustain the verdict. She testified that she was wholly dependent upon the rents of a 200-acre farm, on which there was an $11,000 indebtedness, for her livelihood, and that she did not know whether compensation paid weekly would be sufficient, due to the fact that the expense of upkeep of the farm was heavy. This evidence, with the additional fact that she must pay annual interest on the $11,000 indebtedness on the farm, sustains the answer' of the jury to the issue.

As concerns appellee, Leola Lovett, the minor daughter, there is no proof on this issue, and, under the rule announced by the Commission of Appeals in the case of Bailey v. Tex. Indemnity Co., 14 S.W.(2d) 802, the portion of the judgment awarding a lump sum must be reversed and remanded for a trial of that issue only. The evidence clear-

ly sustains the judgment rendered in her favor on the average weekly compensation plan, and it need not be disturbed, except as modified by the order remanding the cause for trial on the issue of lump sum payment. This same order is made with reference to one-half the attorney's fees awarded to appellee S. L. Staples, and being based on the compensation due appellee Leola Lovett.

Appellant presents several other propositions which relate to alleged errors in the charge or other matters of practice, none of which merit discussion, and are overruled.

The judgment of the trial court is affirmed in part, and in part reversed and remanded, with instructions as hereinabove directed.

Affirmed in part, and reversed and remanded in part, with instructions.