TEXAS EMPLOYERS' INSURANCE AS-
SOCIATION, Appellant,

v.

Kenneth Spriggs STEADMAN et al.,
Appellees.

No. 7707.

Court of Civil Appeals of Texas.

Amarillo.

April 24, 1967.

Rehearing Denied May 29, 1967.

Underwoos, Wilson, Sutton, Heare & Bery, Amarillo, R. A. Wilson, Amarillo, of counsel, for appellant.

Gordon, Gordon & Buzzard, Pampa, Ross N. Buzzard, Pampa, Gibson, Ochsner, Harlan, Kinney & Morris, J. Hadley Edgar, Jr., Amarillo, of counsel, for appellees.

DENTON, Chief Justice.

This is a workmen's compensation case. Judgment was rendered on the jury verdict in favor of the claimant for total and permanent incapacity benefits and certain medical expenses. The insurance carrier has appealed.

Steadman was employed by Boman-Chase Construction Company as a pipe-fitter. On April 5, 1964, while he was bending over a pipe, a grinder "got away" from him and struck him in the face. He was unconscious for some thirty minutes before being taken to the hospital. The treating doctor diagnosed his injuries as a fractured nose, fracture of the frontal bone and multiple abrasions about the face and neck.

Appellant's first group of points of error urge the law question of "no evidence" and the sufficiency of the evidence to support the jury's findings that the April 5, 1964 injury was the producing cause of Steadman's total disability; that the date of the injury was the beginning of such total and permanent incapacity; and that such disability was permanent. In addition to the testimony of Mrs. Steadman and her daughter by a former marriage, and a fellow worker, appellee presented the medical testimony of Dr. Lowery, the original treating doctor, Dr. Wheeler, Dr. Pennal, a psychiatrist who treated Steadman and Dr. Clawson, a psychologist. Steadman remained in the hospital two days after the injury where his fractured nose and frontal bone and lacerations were treated. Immediately upon his release he complained of severe headaches and blurred vision. His wife first noticed he had a "memory problem" the first night in the hospital. He returned to his job some two days after being released from the hospital, and worked for ten days when his employment was terminated by a reduction of the working force. He worked for three days in May and eight or nine days in June of 1964. In the meantime he complained of severe headaches and was treated by Dr. Hays and Dr. Norman Wright, a nose specialist. He was examined by Dr. Pennal, a psychiatrist on June 18, 1964. Dr. Pennal placed appellee in the hospital on July 6 where he remained approximately one week. He was then transferred to a clinic for mental patients. Over a period of 83 days in the clinic, appellee received 27 shock treatments.

Steadman's wife and step-daughter testified his memory began to worsen after the injury until he was unable to recognize his own children and old friends; and he became belligerent and was sensitive to people. They both testified to the changes in his disposition and outlook. Dr. Pennal, testifying by deposition, told of taking appellee's case history which consisted of complaints of poor memory, severe headaches, loss of feeling in the right leg and failing vision. The doctor's neurological examination was essentially normal except for parathesia of the right calf and a memory disturbance. The psychiatric history revealed much depressive symptomatology, included an incapability to concentrate and make decisions; and "some hopelessness in facing the future and also much suicidal pre-occupation". After Steadman was released from the clinic on September 26, 1964, Dr. Pennal continued to see appellee and he continued to have complaints of headaches and faulty memory. It was Dr. Pennal's opinion the depressive disorder was brought on by or precipitated by the April 6 accident. It was his further opinion that if the same symptoms were present at the time of the doctor's deposition, "he will not make much improvement". On cross-examination, the doctor testified it was possible to have personality changes, failing memory and headaches from organic brain damage, but he found no such organic

brain damage in his tests of appellee. He testified that his findings of appellee's symptoms were consistent with both the injury and brain tumor, but in his opinion, with his knowledge of the case history, the brain tumor was improbable. He conceded shock treatments can and do affect patient's memory, but such memory loss would not continue over so long a period as in the case of appellee. Dr. Clawson, the psychologist who is experienced in psychological testing tested appellee. His tests revealed substantially the same mental symptoms as those found by Dr. Pennal. Although admittedly not a medical doctor, Dr. Clawson testified his tests and observations of appellee indicated a recent brain damage, and at another point he stated appellee's condition was "probably mental". Other doctors subsequently treated appellee and their testimony was generally consistent with that of the doctors previously referred to.

Appellant challenges the medical testimony, particularly that of Dr. Pennal, to support the jury findings that the accidental injury was the producing cause of the total disability, its permanency and the finding such disability began on the date of the injury. Appellant does not deny appellee suffered a compensable injury, but the causal connection from the injury of April 6 and the subsequent treatments by Dr. Pennal are urged. The argument is that since the testimony is clear the symptoms of appellee are compatible with both the injury and a brain tumor, the evidence does not support the jury findings. Appellant cites Houston Fire & Casualty Insurance Co. v. Biber (Tex.Civ.App.) 146 S.W. 2d 442 (Judgment Correct) among others for the rule "[w]here the evidence shows that a particular result may probably have occurred by reason of several different causes, and it is not more reasonably probable that one of the causes was operative rather than the others, a finding of casual relationship between the result and a particular cause cannot be sustained."

In determining the "no evidence" points we must consider the evidence favorable to the issue and disregard all evidence which is adverse and contrary to the favorable evidence. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114. Although Dr. Lowery, the original treating doctor, did not detect brain damage during his initial treatment, he testified a severe blow across the face like that received by appellee frequently causes complications to the central nervous system. Both Dr. Pennal and Dr. Wheeler testified that in their opinion appellee's injury was a producing cause of his disability. The wife and step-daughter told of his continuing severe headaches and the drastic change in his personality and behavior as well as his loss of memory some three months prior to the first shock treatments administered by Dr. Pennal. Neither Drs. Pennal nor Wheeler had known of cases where shock treatments had affected loss of memory more than six or seven months. Appellee's headaches and loss of memory and personality changes had extended to the time of the trial, some two years after the accident and nineteen months after the shock treatments were terminated. The wife had known of no previous serious complaints of headaches and no loss of memory prior to the injury. Appellee testified briefly but because of his loss of memory added very little to the evidence. He testified his head "hurt all the time. I don't know what it is to be without it and * * * excitement or exertion until it is almost unbearable." In answer to a question if he had a memory problem he replied, "Well, I could answer that in several ways, if you would like. I don't ever see any old movies on television. I never see anybody I know. It is a complete strange world." Appellant offered no testimony at the trial. After reviewing the evidence most favorable to the verdict we are of the opinion there is ample evidence to support the findings that the accidental injury was the producing cause of Steadman's total disability, that such disability began

on the date of such injury; and such disability is permanent.

There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered an injury which caused total and permanent disability. Texas Employers' Insurance Association v. Smith (Tex.Civ.App.) 374 S.W.2d 287. Liberty Universal Insurance Co. v. Gill (Tex.Civ.App.) 401 S.W.2d 339 (Ref. N.R.E.). The duration and extent of disability received from injury is at best an estimate, which must be determined by the trier of the facts from all the pertinent evidence before it. The Insurance Co. of Texas v. Anderson (Tex.Civ.App.) 272 S.W.2d 772. (Ref. N.R.E.). 63 Tex.Jur.2d, page 515, Workmen's Compensation, Section 461. After reviewing the entire record and considering the evidence which supports the findings complained of and also that which is contrary or adverse thereto, we cannot say such findings are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In Re: King's Estate, 150 Tex. 662, 244 S.W. 2d 660.

Appellant next contends the hypothetical question propounded to Dr. Wheeler was not supported by the evidence in at least four particulars. The contention is there was no evidence to support the assumption Steadman had not previously had headaches or loss of memory and dizziness prior to the injury; that he had worked as a foreman and had foreman capabilities; and that psychological tests revealed a physical rather than a mental problem. Based on these and other assumptions in the hypothetical question, Dr. Wheeler stated the opinion: "It is more likely that he has an organic brain lesion".

A hypothetical question should be so framed as to recite the facts relative to forming an opinion, however, the hypothetical question may assume facts which the evidence fairly tends to prove, although they may not have been clearly established. Texas Employers' Insurance Association v.

Lovett (Tex.Civ.App.) 19 S.W.2d 397 (Writ Ref.). McCormick and Ray, Texas Law of Evidence, Vol. 2, Section 1403. There was testimony tending to prove the elements stated in the hypothetical question. Mrs. Steadman, in response to an inquiry if her husband had complained of headaches prior to the accident, stated "not more than one usually is in ordinary * * *." Both Mrs. Steadman and her daughter detected his loss of memory soon after the accident and testified to the marked difference in his personality and behavior around people. Steadman was described as a strong, healthy, pleasant man prior to his injury. Mr. Buckley, a fellow employee of Steadman, described his job as "co-ordinator for all the repair in the plant". He handled all repair work orders for the plant and allocated the repair jobs to be done. As far as these repairs to the plant were concerned he stated Steadman "would give orders to the foreman, and he had to have quick judgment to process these work orders in the office". The remaining element objected to was the assumption the psychological tests revealed a physical rather than a mental problem. Dr. Clawson stated at one point in his testimony he determined Steadman's problem was "probably mental"; and later he indicated certain interpretations of Steadman's performance was "one of the signs of brain damage * * * recent brain damage". Dr. Clawson was not a medical doctor and he admitted his limitations in this field. We think this testimony set out amply supports that element of the hypothetical question. Considerable latitude is permitted in the propounding of hypothetical questions to expert witnesses, and the form and wording of such questions is left largely to the discretion of the trial court. Foreman v. Texas Employers' Insurance Association, 150 Tex. 468, 241 S.W.2d 977. There was no error in the hypothetical question propounded.

Dr. Pennal took a case history from Mr. Steadman. Mrs. Steadman accompanied him. In response to an inter-

rogatory if the doctor took into consideration information related to him by Mrs. Steadman, Dr. Pennal replied "perhaps". Appellant concedes that generally the statements of patients, made to a physician for the purpose of making a diagnosis, is admissible as an exception to the hearsay rule; but contends the rule is not applicable to statements of Mrs. Steadman. It is not shown what she might have told the doctor, and it is uncertain to what extent he relied on whatever she might have said. We find no merit in appellant's contention.

■ Appellant next complains of the trial court's definition of "producing cause". The court defined "producing cause" as "an efficient, exciting and contributing cause which in a natural and continuous sequence produces disability". Appellant contends the definition is erroneous in that it did not include the requirement "to be a producing cause, the cause relied upon as a producing cause must be one without which the disability claimed would not have existed". Appellant concedes this same contention was rejected in connection with the identical definition in Traders & General Insurance Co. v. Rooth (Tex.Civ.App.) 268 S.W.2d 539 (Ref. N.R.E.). However, appellant distinguishes the case at bar in that the definition does not refer to or account for the effects of the shock treatments given appellee. The definition given by the trial court correctly presents the proper concept of producing cause under the Workmen's Compensation law. See also Travelers Insurance Co. v. Johnson (Tex.Civ.App.) 84 S.W.2d 354. (Dismissed.)

■ Appellant next urges that the usual manner of submitting the special issues concerning whether or not the injury of April 6, 1964 was a producing cause of total and permanent disability beginning on the date of the injury deprived the jury of the opportunity to find the accidental injury was the producing cause of some part of Steadman's disability after April 6, 1964. The argument is the jury could have found, if given an opportunity, that the subsequent shock treatments were related to Steadman's disability. There were no pleadings and requested special issues to submit such a defense. Having found that the definition of "producing cause" was correctly submitted, we overrule appellant's contention.

■ The jury found that Steadman had not worked for at least 210 days of the year immediately preceding his injury at his employment. Steadman had been employed as a pipe-fitter for Boman-Chase Company for approximately six days prior to his injury. Mrs. Steadman testified that prior to this employment he had been employed by others as a mill-wright. Appellant takes the position that the two types of work are substantially the same. The wife, the only witness who testified on this matter, described the two jobs as follows:

"Q. All right now, by the way, do you know what a millwright does?"

"A. Yes, they work on pumps or most anything in plants, engines, motors, any of the maintenance in the plants."

"Q. Do you know what a pipefitter does?"

"A. Well, they set pipes, tubing and if they are more qualified they are instrument fitters, and my husband was an instrument fitter."

According to this testimony the two jobs were different. There is no evidence to the contrary. We think the evidence supports the jury finding. The parties stipulated another pipefitter in the area had worked the required number of days and the wages he had received.

■ By the last three points of error, appellant attacks the awarding of medical and hospital expenses. In response to special issues, the jury found the Northwest Texas Hospital charges and Dr. Pennal's medical services were necessarily incurred

as the result of the injury; that such services were reasonably necessary to give appellee relief from the effects of the injury; and that such charges were reasonable. Again appellant says these issues required the jury to find that either all or none of these hospital and medical services were the result of the injury. Having held the evidence supports the finding that the accident of April 6, 1964 was the producing cause of appellee's disability, we conclude this contention cannot be sustained. The jury rejected appellant's contention the shock treatments contributed to appellee's disability. We think the record supports these findings.

■ Appellant next asserts the medical and hospital expenses are not recoverable, because it was not shown nor found that appellee requested appellant to furnish the hospital and medical services, nor that appellant refused, failed or neglected to furnish them within a reasonable time. It was admitted that appellant was timely given notice of the injury. Article 8306, Vernon's Ann.Tex.Civ.St., Section 7, provides in part: "If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed *after notice of the injury to the association or subscriber*, the injured employee may provide said medical aid, nursing, hospital services, chiropractic services, and medicines at the cost and expense of the association." (Emphasis added.) Section 7 does not require the claimant to request the insurance carrier to furnish such medical services after proper notice of the injury has been given. In interpreting this same section the court in Trinity Universal Insurance Co. v. Farley (Tex.Civ.App.) 408 S.W.2d 776 (N.W.H.) used the following language: "We think that the provisions of Section 7 and the decision construing it clearly shows that the intent of the law is that the carrier has the responsibility of furnishing all reasonable and necessary medical care for any compensable injury under the Texas Workmen's Compensation law after proper notice thereof has been given". See also Travelers Insurance Co. v. Hernandez (5th Cir.) 276 F.2d 267 and United States Fidelity & Guaranty Co. v. Camp (Tex. Civ.App.) 367 S.W.2d 952 (Ref. N.R.E.).

The judgment of the trial court is affirmed.