**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

Margaret W. DAVIS, Appellee.

No. 8091.

Court of Civil Appeals of Texas,
Amarillo.

Feb. 15, 1971.

Rehearing Denied March 15, 1971.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellant.

Wagonseller & Cobb, Gene S. Cobb, Robert L. Stogner, Lubbock, for appellee.

REYNOLDS, Justice.

In this workmen's compensation suit, appellant, the defendant in the trial court, has appealed from a judgment, entered on a jury's verdict, in favor of plaintiff-appellee.

The case was submitted to the jury, over appellant's objection, on the theory of a general injury. In its points 15 and 16, appellant contends there are no pleadings to support the submission of the case on the theory of a general injury. It is appellant's position that appellee plead a specific injury to her eye, or eyes, extending to and affecting her body generally, and there were no submissions of or findings on these issues. In appellee's trial petition she alleged "while she was in the process of grinding an optical lens on a grinding stone, microscopic particles of glass and stone were sprayed into her eyes, eyelids and face * * * (and) became embedded in those parts of her anatomy, causing extreme discomfort, pain and secondary infection. * * * The injuries caused by the particles of glass have extended to and affected other parts of Plaintiff's body, including her head, neck and central nervous system", and "as a result of the accidental injuries * * * she is totally and permanently disabled * * *". No objections or exceptions were lodged against these pleadings, and the issues were joined by a general denial and several defensive allegations.

█ In workmen's compensation suits the object in requiring the petition to set

out the various bodily injuries relied on by the employee is only for the purpose of advising the insurance company as to the character of proof that it will be called upon to meet upon the trial of the case and to guide the trial judge in the admission of the evidence. Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280 (1942); Southern Underwriters v. Thomas, 131 S.W.2d 409 (Tex.Civ.App.—Beaumont 1939, writ dism'd jdgmt. cor.). The Texas Workmen's Compensation Law, Vernon's Ann.Civ.St. Article 8306, provides that all compensable injuries must be compensated as general injuries unless the statutes classify the injury as the subject of specific compensation. National Mutual Casualty Co. v. Lowery, 136 Tex. 188, 148 S.W.2d 1089 (1941). The only provisions pertaining to a specific injury to the eye are found in Section 12, which classifies a specific injury to the eye as one "For the total and permanent loss of the sight of one (1) eye" or as one "For the loss of any eye" and a foot, or a hand, or a leg above the knee, or an arm above the elbow. Thus, the statute specifying what constitutes specific injuries to the eye, it follows that any other injuries to the eye, or eyes, would not constitute a specific injury. Texas Employers Ins. Ass'n v. Thrash, 136 S.W.2d 905 (Tex.Civ.App.—El Paso 1940, writ dism'd jdgmt. cor.).

■ In the case before us appellee did not allege or attempt to prove the loss of sight of any eye, or the loss of an eye coupled with another specific member of body, and Section 12 of Article 8306, V.A. T.S., is not applicable to this situation. Consequently, if appellee is entitled to any compensation under her pleadings, she must be compensated for a general injury. It has been held that where the injury to the eye results in disability of a general nature, it is proper to submit the case to the jury as a general injury. Maryland Casualty Co. v. Crosby, 117 S.W.2d 524 (Tex.Civ.App.—Beaumont 1938, writ dism'd by agr.). Under the authorities we believe a fair interpretation of the pleading

is that it does not allege a specific injury, but sufficiently alleges a general injury so as to put the appellant on notice as to the proof required to be met upon the trial. This interpretation conforms to the general rule announced by the authorities cited by appellant for the proposition that a party is entitled to recover only on the cause of action pleaded, where there is evidence in support thereof, and the issues submitted must be supported by the pleadings. Appellant's points 15 and 16 are overruled.

■ The jury found that appellee Margaret W. Davis, while in the course of her employment sustained an accidental injury to her body, totally incapacitating her for 296 weeks. The jury rejected the defensive theories, finding that such incapacity was not caused solely by the loss of sight of her left eye, that the injury was not confined to her left eye, and that the incapacity was not caused solely by keratoconjunctivitis arising independently of and not causally connected with the injury. Appellant's first 14 points allege there is no evidence, or in the alternative insufficient evidence, to support the jury's findings that appellee's temporary total incapacity was caused by injury to her body, rather than being solely caused by keratoconjunctivitis not causally connected with the injury. These assignments require a recapitulation of the evidence. In determining the "no evidence" assignments we must consider the evidence favorable to the issue and disregard all evidence which is adverse and contrary to the favorable evidence. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114 (1950). In determining the insufficient evidence assignments we are required to consider and weigh all of the evidence, both supporting and contrary to the verdict, and to sustain appellant's challenge if the evidence is so against the great weight and preponderance of the evidence as to be manifestly unjust, even though there is some evidence of probative force in support of the verdict. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The record, interpreted in light of the jury's verdict, shows appellee, who was 42 years old at the time of the trial in September, 1969, was grinding some lenses on a corborundum stone about quitting time on May 27, 1964, when something, she later determined to be stone and glass from the roughed up stone, hit her in the eyes and face and "it felt like hot fire". She applied eye wash and ice water, which did not help, and went home. Her face was burning "like fire", she took a "hurting pill" and applied ice packs to her face. The next morning she reported her injury to her employer, an optometrist, who made a hurried examination of her eyes, did not see anything, but recommended further medical attention. She was referred to and treated by Dr. Anderson, an ophthalmologist, who treated her for some two months.

Dr. Anderson, who was called as a witness by the defense, testified he took a history from Mrs. Davis and examined her with a slit lamp microscope with fluorescein stain in each eye. He found no foreign bodies in the eyelids or eyes, but found a slight scratching on the cornea of the left eye. Dr. Anderson again examined appellee on June 16, 1964, when he found her well from her original injury, and on July 27 and August 4, 1964, and on every occasion he found no evidence of foreign bodies, other than on one occasion when he removed some calcium concretions in the upper lid.

On June 2, 1964, Dr. Wallace, an ophthalmologist who testified by deposition, examined appellee with a slit lamp and an ophthalmoscope, and found no foreign bodies in either of her eyes or in the conjunctiva (the skin of the inside of the eyelids), and no marks on the cornea to indicate presence of foreign objects. He found no evidence of eye disease and no indications she was having any pain or loss of vision. He further testified that if particles of glass had been removed from her eyelids, they must have gotten in there since he examined her.

During the first two months following her injury, appellee worked for some two weeks, but she testified she could not do her full job. She said she "was suffering death" and was taken to Clovis, New Mexico, to see Dr. Curry, an ophthalmologist, on August 5, 1964. Dr. Curry testified by interrogatories taken July 16, 1965, and September 13, 1967. He took a history, and her complaints were a scratching sensation, photophobia and lacrimation of both eyes. He made an examination with a slit lamp, electric tonometer and surgical microscope. He found multiple microscopic particles of glass embedded in the conjunctiva of the lids of both eyes, several minute corneal abrasions of both eyes, and keratoconjunctivitis. Mrs. Davis was hospitalized until August 13, 1964, during which time Dr. Curry removed several microscopic foreign bodies (glass) and her eyes were infected. On September 8, 1964, Dr. Curry reported it "is within reason to assume that she will be able to resume her former occupation within two weeks time"; but since her release from the hospital, Dr. Curry saw her some 64 times up to June 19, 1965, during which time he found marked photophobia, lacrimation, and removed additional microscopic foreign bodies embedded in the palpebral and orbital conjunctiva of the upper and lower lids of both eyes. He expressed the opinion that the cause of her injury was microscopic particles of glass, and that she had been under undue nervous strain because of the past condition of her eyes, caused by pain from the eye condition, but there was no vision impairment from the eye condition. He was of the further opinion that the menopause is not a cause of keratoconjunctivitis, that trauma is a contributing factor to keratoconjunctivitis, and that while keratoconjunctivitis sicca (lack of tears) may be caused by rheumatoid arthritis, Mrs. Davis had bacterial keratoconjunctivitis.

Dr. Anderson saw Mrs. Davis on February 22, 1965, and diagnosed her condition as keratoconjunctivitis of the metabolic type due to hormone changes occurring

mostly in women over the age of 40, or to rheumatoid arthritis. He treated her on six occasions for this condition until March 18, 1965. On March 18, 1965, appellee showed him a piece of glass 3/16th of an inch long and 1/16th of an inch wide which she said she had pulled out of her eye. His opinion was that it would have been intolerable for her to have had a piece of glass that large in her eye for that period of time, and he would have found it if it had been there at the time of his examinations.

Dr. Goodwin, a medical doctor specializing in internal medicine, made a general examination of Mrs. Davis in the hospital on March 26, 1965, and testified by deposition. An examination with an ophthalmoscope of the fundus of the eye (the retina, the back of the eye where the optic nerve enters the eyeball) revealed no evidence of any foreign bodies or of any eye disease. He was of the opinion her complaints were functionally induced. On the recommendation of Dr. Goodwin, appellee saw Dr. Gage, an ophthalmologist, four times between March 29 and April 23, 1965. Dr. Gage's written interrogatories reveal he conducted a slit lamp examination on March 29 and found no evidence of foreign bodies in either eye, and on subsequent occasions found no evidence of pathology or changes which would correlate her complaints with the injury described.

On May 11, 1965, appellee was examined by Dr. Long, an ophthalmologist in Denver, Colorado, at the request of Dr. Curry. He conducted a slit lamp microscope examination, and found no objective evidence of damage to explain her symptoms, and no foreign particles or evidence of corneal irritation or scarring. His opinion was that even if appellee had micro particles embedded in the conjunctiva, they could not cause the severe symptoms of burning, discomfort and photophobia of which she complained, and that her complaints were the result of functional disorder and not related to organic damage from the accident described by her.

In September, 1965, Mrs. Davis went back to see Dr. Curry who placed her in the hospital because ulcers had developed on both eyes, and she remained there six to eight days. The only doctor who has examined or treated appellee since May, 1965, is Dr. Curry. Appellee was still being treated by Dr. Curry at the time of the trial in September, 1969.

Appellee, prior to the date of her injury, had never had any trouble with her eyes, although she had worn bifocals in her work since she was 20. Since the injury, she is unable to stand wax or fumes of any kind and sunlight aggravates the eye infection, her nerves got real bad, the pain saps her strength, she has to go to bed and doctor her eyes, and has been free from pain for only two hours at a time. There is a ropy type secretion from her eyes, she has not been able to do all her house or yard work, and, while formerly she was active socially, she does not feel like going now. Before the incident she weighed between 116 and 118 pounds, now she weighs between 101 and 103 pounds, and her weight has been as low as 86 pounds. When her eyes hurt, she gets sick at her stomach and can not eat. Other than during the two month period immediately following the injury, appellee has not worked.

After reviewing the evidence most favorable to the verdict, we are of the opinion there is some evidence of probative force to support the findings of the jury, and, consequently, appellant's contention that there is no evidence to support such findings must be overruled.

With respect to its insufficient evidence assignments, appellant complains, in essence, because the jury, to the extent of its verdict, gave more credence to the testimony of appellee and her supporting medical evidence than it did to the contrary medical evidence. The jury had every opportunity to see and observe appellee and the witnesses appearing personally and to hear the deposition testimony of the other witnesses, and to weigh and judge the

testimony. There is no fixed rule of evidence by which one is required to establish the fact of an injury which caused disability, and the extent and duration of the disability received from an injury is at best an estimate, which must be determined by the trier of the facts from all the pertinent evidence before it. Texas Employers' Insurance Ass'n v. Steadman, 415 S.W.2d 211 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.). The opinions of medical experts have been held not to be controlling or binding on the court or jury, except in certain situations where matters of scientific fact can be proved only by experts with scientific knowledge, Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W.2d 943 (1944); Angelina Casualty Co. v. Spencer, 310 S.W.2d 682 (Tex.Civ.App.—Beaumont 1958, writ ref'd n. r. e.), and, in our opinion, this is not a case revolving around a scientific fact provable only by experts with scientific knowledge. Even the experts disagreed. Any conflict in the testimony of appellee and the medical testimony favorable to her with the adverse medical testimony merely raises questions of fact to be determined by the jury. American General Ins. Co. v. Florez, 327 S.W.2d 643 (Tex.Civ.App.—Houston 1959, no writ). It is well settled that the factual testimony of a claimant alone will support a finding of disability, though the lay evidence may be contradicted by the testimony of medical experts, Travelers Ins. Co. v. Wade, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.), and any doubt that we may have as to whether this evidence actually supported the jury findings must be resolved in favor of the right of the injured workman to receive compensation. Travelers Ins. Co. v. Arnold, 378 S.W.2d 78 (Tex.Civ.App.—Dallas 1964, no writ). Viewing the record as a whole, we cannot say the jury's findings are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Accordingly, appellant's points 1 through 14 are overruled.

By its point of error No. 17 appellant claims reversible error by the trial court in excluding a portion of Dr. Goodwin's deposition testimony. The excluded testimony was offered to impeach appellee's testimony and to support the defensive theory that appellee's incapacity, if any, was not caused by her May 27, 1964, injury. The testimony was excluded on the objections that it bore no relation to the injury, that Dr. Goodwin did not express, as a predicate to the admission of the evidence, an opinion the appellee was malingering or faking the complaints made prior to her injury, that no proper predicate was laid, that such evidence would prejudice appellee, and that it was too remote, irrelevant and immaterial.

At the trial appellee testified that prior to her injury she had not been bothered to any extent with the complaints she has since the injury. She stated she previously had not gone to a doctor complaining of lack of strength, headaches, dizziness, or any ear, neck or back trouble. She further testified that before the injury she was real strong, but afterwards she had trouble with her nerves which sapped her strength, she had been unable to do her customary work, her house or yard work, and that although she might obtain, she could not retain, employment in her field.

The excluded deposition testimony concerned appellee's complaints made to Dr. Goodwin and his findings in 1950, 1951 and 1957, a period from 14 to seven years prior to the injury. Mrs. Davis consulted Dr. Goodwin four times in 1950, four times in 1951 and once in 1957. In 1950 her complaints were that she had aches and pains in most every place on her body, that some part of her body was hurting all the time, and that she did not have a bit of energy. She also complained of bronchitis, pain in her right arm and tenderness in the neck musculature, and dizzy headaches, tension and tightness in her neck muscles, shoulders and calves of her legs. Dr. Goodwin's examinations revealed no physical findings, other than an acute tracheal bronchitis infection, which would substantiate the history appellee gave him. In 1951

Mrs. Davis complained of abnormal bowel movement, weakness of the muscles in her right arm and shoulder and tingling in her fingers. Again, Dr. Goodwin found no evidences of trouble from an organic point of view other than an ordinary viral type of sore throat. In 1957 Mrs. Davis' complaints had to do with her joints and again Dr. Goodwin found no organic cause of her complaints.

■ In excluding this testimony we think the trial court was in error. Appellant has the right to rebut the testimony offered by appellee and to offer testimony in support of its defensive theory. The question is whether appellant has discharged its burden to show that rejection of the proffered testimony was error reasonably calculated to cause and probably did cause rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. In determining whether the excluded testimony was reasonably calculated to cause and probably did cause rendition of an improper judgment, we are required to examine the record as a whole. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 235 S.W.2d 115 (1951).

The record, in addition to the evidence previously set forth, shows the admitted portion of Dr. Goodwin's deposition before the jury. It reveals that when he saw Mrs. Davis in April, 1962, on two occasions, she had some problems with her stomach and ears, glands in her neck and some numbness in her feet and fingers, and her back had been bothering her, but that, other than a small polyp (benign tumor) at the opening of her cervix, there were no organic findings to account for her complaints. On March 26, 1965, Mrs. Davis complained of eye irritation with pain shooting through her eyeballs into her head, and her spine would draw. On December 6, 1965, Mrs. Davis complained of discomfort in her back and knee. Dr. Goodwin found no organic background to account for these complaints. He testified that "starting back in 1950" until 1965 most all of Mrs. Davis' complaints were caused by nervousness and that she was a nervous type of person. He further testified that in most of the visits he saw Mrs. Davis "going back before March, 1965" aches and pains were a part of the picture, and that "from 1950 up to March, 1965" she had other complaints for which no physical reason was found. And, again, "as far back as 1950" when he first saw Mrs. Davis, many times she had complaints of aches and pains of various parts of her body for which examination revealed no physical or medical reason.

■ We are required to indulge every reasonable presumption consistent with the record in favor of the correctness of the judgment. McElyea v. Parker, 125 Tex. 225, 81 S.W.2d 649. Since Dr. Goodwin's excluded testimony was cumulative of his admitted testimony, we do not perceive error. The reversal of the trial court's judgment is not justified unless an examination of the record as a whole leads to the conclusion that the error was calculated to cause and probably did cause the jury to give the answer it did to all issues which will support the judgment. State v. Parrish et al., 159 Tex. 306, 320 S.W.2d 330 (1958). After reviewing the record as a whole, it is our judgment that the action of the trial court in sustaining the objections to the portion of the testimony excluded, while error, was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment in this cause. Accordingly, appellant's point of error No. 17 is overruled.

Finding no reversible error, we affirm the judgment of the trial court.