**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**W. A. STEPHENSON, Appellee.**

**No. 8352.**

Court of Civil Appeals of Texas, Amarillo.

May 29, 1973.

Rehearing Denied June 25, 1973.

Gibson, Ochsner, Adkins, Harlan & Hankins, Michael C. Musick, Amarillo, for appellant.

Edwards, Smith & Associates, Carson Smith, Amarillo, for appellee.

ELLIS, Chief Justice.

In this workmen's compensation suit, the insurance carrier has appealed from a judgment entered on a jury's verdict awarding the claimant compensation for total and permanent incapacity. Affirmed.

W. A. Stephenson, plaintiff-appellee, brought suit against Texas Employers' Insurance Association, defendant-appellant, alleging that as a result of being accidentally and unexpectedly thrown out of a pickup truck on or about December 2, 1970, while in the course of his employment, he suffered a general injury which resulted in his total and permanent incapacity. The petition set out that he suffered injuries to his back, hips, legs, head and body in general, and that as a result of such accident he suffered aggravation of vascular problems, low back and hip problems, pain radiating in the left leg with resulting hypersensitivity, and various other related injuries.

It is the appellant's position that while appellee had suffered an injury during the course of his employment of December 2, 1970, such injury resulted only in bruises

and contusions which resulted in no loss of work time, or in the alternative, that any injuries suffered by appellee on that date resulted in only temporary and partial disability. The appellant further contended in the alternative that if the appellee had any incapacity or disability such was caused solely from a prior or subsequent injury or disease which was not produced or aggravated by the accidental injury on or about the 2nd day of December, 1970.

The case was submitted to the jury on special issues. In answer to special issues nos. 1, 2 and 3, respectively, the jury found that (1) the appellee sustained total incapacity as a result of injuries sustained on or about December 2, 1970; (2) such total incapacity began on that date; and (3) such total incapacity is permanent. In answer to other issues not challenged, the jury determined that appellee would suffer no partial incapacity as a result of such injury, and that such incapacity so found or that any incapacity appellee now has was not caused solely by carotid artery disease, arteriosclerosis, emphysema, duodenal ulcer, esophagitis or gastritis independent of and not aggravated by his injury of December 2, 1970.

The appellant contends in its six points of error that the trial court erred in rendering judgment based upon the jury's answers to special issues nos. 1, 2 and 3, because (1) the jury's findings on each of those issues was so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust; and (2) the evidence is factually insufficient to support such findings. Since this appeal is based solely upon points dealing with the weight and sufficiency of the evidence, we shall, as required, consider all of the evidence, including that supporting and contrary to the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The record reveals that at the time of the accident, the appellee was fifty-nine years of age. At that time appellee, whose occupation was that of welder-pipefitter, was working for Robinson Industrial Contractors at Alamo Refinery in Phillips, Texas. He was working on the night shift on that particular job, and about midnight he and some other members of the crew were loading into a pickup truck "to go eat lunch." After the appellee had climbed into the bed of the truck, the vehicle was started suddenly and he was thrown out of the back of the pickup on to the pavement, striking his back, sides, neck, head and hips. He was helped back into the pickup, rode to the shop, ate his meal and then returned to the job and worked for the remainder of that particular shift.

The appellee testified that upon striking the pavement, he immediately began having a headache and that he also developed black and blue marks on his legs. When he returned home the following morning he took a hot bath and his wife massaged his back with a patent medicine. He stated that the next morning he could barely "hobble" around, but nevertheless he went to work. He continued to work, but after two or three days he was sent to see a physician by the "company safety man." This doctor did not testify, but, according to the appellee, he prescribed some pills and sent the appellee home. The appellee continued to work for Robinson for approximately two weeks at which time that particular project was completed.

After this job with Robinson was completed, the appellee, not finding other work immediately available, went to Houston and visited his son. He stated that while in Houston for three or four weeks he suffered pain in his hip, shoulders, back, neck and head. He left Houston, returned to Pampa and, finding no work available there, he went to Denver, Colorado, where he became employed in fabricating pipe and doing "light" welding work. After approximately one month there was a "reduction in force" on the project in Denver which resulted in the termination of his employment there. The appellee then returned to Pampa and took a job with Rob-

inson at the "Sneed Plant" near Dumas, Texas. The work on this project was completed in a month or six weeks. About a week later the appellee was employed at McLean, Texas. He stated that he worked at this job for only a "week and a half" because he "just couldn't do the work." He testified that the work he performed in Denver was light work and that he struggled through the job as he was having problems with his back, shoulders, hip, neck and head. He stated, also, that during his employment at the "Sneed Plant" he was given considerable "help" by fellow employees since he could not do the heavy labor, and that finally, on the McLean job he had to quit working because of the problems with his back, shoulders, hip, neck and head. He claimed that prior to the accident on December 2, 1970, he was in good health, except for an ulcer and a shoulder problem in 1953 or 1954, but that after the accident he had the problems with his back, shoulders, hip, neck and head, and further that he later developed "blackout" or "fainting spells" as well as "numb feelings" in his neck and face. The appellee stated that he felt that he was totally disabled; that his injury of December 2, 1970, started "bothering" his work right after the accident; and that his condition continued to get worse until he had to quit work.

Herman Gants, a witness· for the appellee, gave testimony to the effect that he had known appellee for over twenty years and that he knew him to be a good worker. Gants testified that while he had not seen the accident of December 2, 1970, he was working on the same job and knew that appellee had been injured. Gants worked as foreman on the subsequent jobs near Dumas and McLean and stated that appellee was given a "preference of an easier task on both jobs." He also testified that appellee had trouble with his back and with fainting spells on the McLean job.

Mrs. Maureen Stephenson, appellee's wife, testified that when appellee returned home the morning after the accident, he complained of back pains, and that she applied a patent medicine and a hot pad to his back. She also gave testimony to the effect that on the subsequent trip to Houston her husband had back problems and could not remain in the automobile for long, continuous periods of time; that a few days after the accident he developed dark blue spots on his back, shoulders, hips and legs; and that he continued to have such problems and she continued to administer the home treatments throughout the duration of the Denver job, the work at the Sneed Plant and the final job at McLean.

Appellant relied entirely upon medical evidence. It introduced records of appellee's hospitalization of July 7 and 8, 1971, approximately six months after the accident in question. Appellee was hospitalized at this time for a stomach ulcer and no mention was made in the record of any problem concerning appellee's back, hip, shoulder, or legs. At this time appellee was under the care of Dr. McField McDaniel, the family physician.

Appellant introduced by way of sworn deposition the testimony of Dr. Edward F. Thomas, a specialist in orthopedic surgery who examined appellee on April 8, 1971, some four months after the accident. He testified that appellee was seen at that time primarily because of a persistent knot in the left calf and a definite hypersensitivity over the left thigh and a complaint concerning the lower back. He diagnosed appellee's symptoms as being those of meralgia paresthetica which has to do with sensation and is often casued "with obesity, sometimes with wearing a tight belt or sometimes with people who have seatbelts in a car wearing them unusually tight." Doctor Thomas further testified that the condition from which appellee was suffering might be related to some type of trauma, but based upon the history given him by appellee, he could not find such a causal connection. It was Doctor Thomas' opinion that none of the symptoms exhibit-

ed by appellee at that time would cause any permanent disability.

Appellee sought treatment from Doctor Thomas again on August 30, 1971. At that time appellee was complaining of a weakness on the left side of his face and body. After giving appellee a physical examination, Doctor Thomas referred him to Dr. T. M. Nicklaus, a specialist of internal medicine. Doctor Nicklaus concluded that appellee was suffering from an insufficient supply of blood reaching the brain and that immediate surgery was required if a stroke was to be prevented. His diagnosis was that appellee had carotid artery disease, arteriosclerosis, and chronic bronchitis. Doctor Nicklaus testified when the appellee was first examined, he complained of pain in the back but there was no objective evidence of such pain and "that was not dealt with during his hospitalization." He could find no relationship between the accident on December 2, 1970, and the carotid artery disease and arteriosclerosis. Further, Doctor Nicklaus expressed the opinion that any disability suffered by the appellee was related to such arterial diseases.

Dr. Herman L. Hampton, a vascular surgeon, performed surgery upon the appellee to correct his arterial condition on September 3, 1971. Doctor Hampton diagnosed appellee's condition as carotid artery disease as well as arteriosclerosis of the arteries to the legs which would cause pain to his leg. Doctor Hampton stated that it was his opinion that the appellee's disability was caused by arteriosclerosis and carotid artery disease and that it was unlikely that trauma caused or affected such disability.

 The foregoing evidence was before the jury. It is well established that a jury is entitled to believe all, part or none of the testimony of any witness and draw its conclusions therefrom. Further, the jury may consider all of the circumstances together with reasonable inferences therefrom. Additionally, the jury may reach its conclusions by blending all evidence before

it and is not required to credit all testimony of any witness. Martin v. Gurinsky's Estate, 377 S.W.2d 710 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.). There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered an injury which caused disability, and the extent and duration of the disability received from an injury is at best an estimate which must be determined by the trier of the facts from all pertinent evidence before it. Maryland Casualty Company v. Davis, 464 S.W.2d 433 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.); Texas Employers' Insurance Association v. Steadman, 415 S.W.2d 211 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.). It is well settled that the factual testimony of the claimant and other lay witnesses can support a finding of disability even though the lay evidence may be contradicted by the testimony of medical experts. Travelers Insurance Co. v. Wade, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); Maryland Casualty Company v. Davis, supra. Further, any doubt as to whether the evidence supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. Texas Employers' Insurance Association v. Washington, 437 S.W.2d 340 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r.e.); Travelers Insurance Co. v. Arnold, 378 S.W.3d 78 (Tex.Civ.App.—Dallas 1964, no writ).

In this case the appellee has presented evidence consisting of his own testimony, that of his wife and his supervisor or foreman relative to the beginning date of the injury and the total and permanent nature thereof. The appellee presented testimony to the effect that he had a good work record for twenty-five years prior to the accident on December 2, 1970, and that from the date of the accident up until the middle of June, 1971, after which he was no longer able to do any work, he had an erratic work history of approximately eleven weeks out of the period of about seven

months following the injury. Also, there is evidence submitted by the appellee to the effect that after the accident his back, hips and head continuously caused him to have pain, limitation of motion and finally a total disability to perform any work. The appellee testified that he was totally disabled and in his opinion would never be able to do manual labor. Also, he testified that he had continuous trouble with his back and that it was sore all of the time—even at the time of his giving testimony at the trial—and that he was able to do but little lifting. The appellee and his lay witnesses testified in effect that prior to December 2, 1970, he was in good health except for his ulcer; that after the accident he had a history of pain and performed tasks that were lighter than his normal work; that he was "carried" on at least two jobs; and that he saw various physicians, and made known his complaints concerning his back, neck and legs. Although the claimant was able to perform some work after December 2, 1970, he testified that such work was of a "lighter" nature, that he received assistance from his co-workers and that he had to work in order to "eat." It is well established that a claimant is permitted to show that he was forced to work through economic necessity after he sustained his injury. Texas General Indemnity Company v. Thomas, 428 S.W.2d 463 (Tex.Civ.App.— Tyler 1968, writ ref'd n.r.e.), and that he is not precluded from recovering compensation for a period of time he was working and earning wages following the date of his injury. Standard Fire Insurance Company v. Malone, 457 S.W.2d 379 (Tex.Civ. App.—Waco 1970, no writ).

■ The appellant relies primarily upon the medical testimony in support of its contentions regarding the weight and sufficiency of the evidence. A review of the medical testimony discloses that it deals mainly with the claimant's vascular problems first manifested in June, 1971 and thereafter, and no treatment was administered to his back, hip, neck and other complaints which he testified that he had im-

mediately following the accident on December 2, 1970, and continued until the time of the trial. Further, it appears that the medical testimony, dealing primarily with the onset of claimant's vascular conditions, does not necessarily serve to contradict the lay testimony. Although the medical testimony is to the effect that the appellee's disability is attributable to an arterial condition, discovered some months after the accident and is independent from and not traceable to the trauma, such evidence does not necessarily negative the evidence presented by the appellee and his lay witnesses to the effect that his injury of December 2, 1970, resulted in his total and permanent incapacity to perform the normal tasks as a workman. This raises a fact question for the jury's determination and the jury could have considered, from the evidence in its entirety, that he was totally and permanently incapacitated as a workman as a result of the trauma and additionally suffered from the onset of the described vascular problems which were first discovered some months after the accident. Even if it be considered that the medical testimony was contradictory to the lay testimony and inferences therefrom, the opinion of the medical experts is not binding on the courts except in certain situations where matters of scientific fact can be proved by experts with scientific knowledge, Coxson v. Atlanta Life Insurance Co., 142 Tex. 544, 179 S.W.2d 943 (1944); Maryland Casualty Company v. Davis, supra, and, under all the pertinent circumstances, we do not deem that the cause and duration of the disability here is provable only from the medical testimony, but raises factual questions for jury determination. See American General Ins. Co. v. Florez, 327 S.W.2d 643 (Tex.Civ.App.— Houston 1959, no writ); Travelers Insurance Co. v. Wade, supra, and Travelers Insurance Co. v. Arnold, supra.

Admittedly, some discrepancy was shown between the claimant's previous testimony and that given at the trial concerning his condition following the operation and the

time that he considered that his back and shoulder pain interfered with his work. The jury, however, apparently elected to give credence to the evidence offered by the appellee and his witnesses and to conclude from such testimony and the circumstances that the appellee suffered a total and permanent incapacity as a result of the accident of December 2, 1970.

In support of its contentions that the evidence is against the overwhelming weight and preponderance of the evidence, the appellant has cited the case of Texas Employers' Insurance Association v. Moran, 261 S.W.2d 855 (Tex.Civ.App.—Eastland 1953, writ dism'd). In the Moran case the court of civil appeals reversed the judgment of the trial court and remanded the cause on the grounds that the evidence did not support the jury's finding that the claimant had suffered total and permanent disability and that such finding was against the overwhelming weight and preponderance of the evidence. We note, however, that in the Moran case, although the claimant was unable to work for some time following the injury, the testimony clearly showed that he was employed at the time of the trial; that he had worked steadily at the same type of work he had formerly done prior to the accident, with some overtime work, for approximately eleven months immediately prior to the trial; and that he intended to continue employment of this type after the trial. In the instant case, the appellant states in its brief that at the time of trial there was ample evidence that appellee was totally incapacitated, but contends that there is no evidence to connect the disabled condition to an injury. Each case, of course, must be determined on the basis of its underlying facts and circumstances, and it is our opinion that in the instant case, the testimony of the claimant, his wife and his supervisor supply the pertinent facts reflecting the permanent nature of the appellee's disability, and from such testimony and the surrounding circumstances, the jury could reasonably conclude that the incapacity result-

ed from the accident. Thus, it is our opinion that the holding of the Moran case is not applicable in the light of the significant facts in this case.

From a consideration of the entire record, it is our opinion that the evidence in this case is factually sufficient to support the jury's findings and that such findings are not so against the weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

In view of the foregoing, the appellant's points of error nos. 1–6 are overruled. Accordingly, the judgment of the trial court is affirmed.