**HIGHLANDS UNDERWRITERS INSURANCE COMPANY, Appellant,**

**v.**

**Jacinto R. CARABAJAL, Appellee.**

**No. 801.**

Court of Civil Appeals of Texas, Corpus Christi.

Nov. 30, 1973.

On Filing of Remittitur Dec. 21, 1973.

Rehearing Denied Jan. 3, 1974.

Jack Fields, Port Lavaca, Emmett Cole, Jr., Kilgore, Cole & Garrett, Victoria, for appellant.

O. F. Jones, Victoria, for appellee.

## OPINION

BISSETT, Justice.

This is a workman's compensation case. Following a jury trial, Jacinto R. Carabajal, plaintiff, recovered judgment for total and permanent disability and for medical expenses which the jury found that Highlands Underwriters Insurance Company, defendant compensation insurance carrier,

failed to provide. Defendant has duly perfected its appeal. We affirm on condition of remittitur.

Among other findings, the jury found that plaintiff was totally and permanently disabled, that defendant failed to furnish plaintiff "within a reasonable time medical care reasonably required as a result of such injury", and that the reasonable cost expended or incurred by plaintiff for such "reasonably required medical care" was $4,001.68. Those findings are challenged by defendant on the grounds of "no evidence", "factually insufficient evidence" and "against the great weight and preponderance of the evidence" points. We have, therefore, examined all of the evidence here presented.

Plaintiff was injured on September 3, 1971, when a metal scaffold fell on top of him. He was employed at that time as a construction worker by Drexler Construction Company. Following the accident, plaintiff was sent by his employer to Dr. Reagan, Beeville, Texas, who upon examination, found that plaintiff had sustained a bruised muscle in his shoulder. He gave plaintiff a shot and sent him home with instructions to rest, to apply heat applications to his shoulder, and to come back in several days. Plaintiff saw Dr. Reagan again on September 7th, and was told to go back to work the next day. Dr. Reagan testified that plaintiff never voiced any complaint which indicated a back injury. The doctor's final report to defendant, dated September 15, 1971, stated that plaintiff was able to resume work as of September 8, 1971, and that no permanent disability was anticipated.

On October 1, 1971, plaintiff, of his own accord, went to see Dr. Puentes in Goliad, Texas. Dr. Puentes said that plaintiff complained to him of pain in the back of his neck, that he examined plaintiff thoroughly, and that all of his findings were negative. Plaintiff was requested to call again in about a week. He complied, and Dr. Puentes stated that plaintiff then

told him that he didn't have any pain and was feeling all right. Plaintiff did not see Dr. Puentes again.

Plaintiff contacted Dr. Jerome C. Hohf, of Victoria, Texas, on November 20, 1971, who, after an examination of plaintiff, told him to quit work. Plaintiff was treated by Dr. Hohf from November 29, 1971 until October 18, 1972. He was hospitalized on three occasions during that time at the Hohf Clinic and Hospital, Victoria, Texas, which was owned by Dr. Hohf and his associates. The initial treatment was not successful and plaintiff was hospitalized on January 8, 1972; Dr. Hohf performed an occipital neurectomy on plaintiff on January 19, 1972. Plaintiff was released from the hospital about a week later. Dr. Hohf did his first neurological testing of plaintiff on March 6th; plaintiff was hospitalized again on March 17th, and was discharged from the hospital on March 21st. On July 19, 1972, Dr. Hohf operated on plaintiff, and removed the 3rd, 4th and 5th lumbar intervertebral discs from plaintiff's back.

Plaintiff testified that he had worked as a laborer in the construction business for many years before the accident of September 3, 1971. Drexler ceased work on the job where plaintiff was employed on September 4, 1971; As a result, all of its employees, including plaintiff, were laid off. Work was resumed about a month later, but plaintiff did not go back to work for Drexler. Instead, he went to work for B. A. Box Tank & Supply Company as a laborer sometime in October, where he worked for about two weeks; he had to quit because his back was bothering him. He then obtained work as a carpenter's helper and worked at that job for about two months; he was still having trouble with his back and neck. He quit the carpenter work and got a job running a scraper because he thought it would be easier on him; however, he quit running the scraper after a short time because his legs and back were bothering him.

Plaintiff further testified that he experienced pain in his back from the date of injury until the time of back surgery, and that the pain made it difficult for him to do manual labor. He could not bend his back or lift heavy objects without suffering pain, discomfort and losing sleep. Sometimes standing or walking bothered him, and sometimes it didn't. He had never found a job that did not require some lifting. He stated that he could not, at the time of trial, do the work that he had previously done.

Plaintiff's wife said that plaintiff had never had any back trouble before he was injured on September 3, 1971, and that, following the accident, plaintiff had trouble getting around and "he continued to suffer with· his back troubles and neck problems". Other witnesses who were experienced in the construction field testified that they would not hire a man as a laborer who either had a bad back or who could not lift more than twenty-five pounds, or who could not stoop or bend over.

Dr. Hohf testified that the disability sustained by plaintiff was total and permanent. He was of the opinion that plaintiff's disability resulted from the injury that he sustained on September 3, 1971. He further testified that plaintiff should avoid "strenuous manual labor", which meant that he should avoid "heavy lifting, bending or stooping". He stated that plaintiff should not lift anything which weighed more than twenty-five pounds. He said that he would not pass plaintiff in a pre-employment physical examination for construction work, oil field work, or welding work, except with restrictions that would limit plaintiff so that he could only perform part of the tasks incident to such type of work.

■ There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered an injury which has caused total and permanent disability. Liberty Universal Insurance Com-

pany v. Gill, 401 S.W.2d 339 (Tex.Civ.App. —Houston 1966, writ ref'd n.r.e.). "The duration and extent of disability resulting from injury is at best an estimate which must be determined by a jury from all the pertinent facts before it". Employers Reinsurance Corporation v. Jones, 195 S.W.2d 810 (Tex.Civ.App.—Beaumont 1946, writ ref'd n.r.e.) ; Olivarez v. Texas Employers' Insurance Ass'n, 486 S.W.2d 884 (Tex.Civ.App.—Corpus Christi 1972, n.w.h.).

■■ In our opinion, there is ample evidence to support the findings of the jury that plaintiff sustained total and permanent incapacity by reason of his injury of September 3, 1971. Any inconsistencies or conflicts in the testimony of the medical witnesses were resolved by the jury in plaintiff's favor, as was its privilege.

In November, 1971, plaintiff employed Honorable Jack Fields, an attorney, to represent him in connection with his injury. A notice of injury and claim for compensation was signed by plaintiff on November 24, 1972, which was received by the Industrial Accident Board on November 29, 1972. The notice and claim showed on its face that plaintiff was injured on September 3, 1971, when a "metal scaffold came apart striking the back of my neck, injuring my neck, back and body generally".

On January 10, 1972, defendant's representative wrote Mr. Fields, as follows:

"With reference to our telephone conversation, we have not yet received the current on any medical information you might have concerning your client, Jacinto Carabajal. As you know, this is a disputed claim and therefore the medical is necessary. Your early attention to this request will be greatly appreciated."

Mr. Fields, in his reply letter, stated:

"I have no medical concerning the above named claimant. Please furnish me with copies of reports from your company as the doctor has at your earliest convenience."

Then, by letter that was apparently written on January 12, 1972, defendant's representative again wrote to Mr. Fields and advised him that Dr. Reagan had discharged plaintiff on September 8, 1971 and that no disability was anticipated. A copy of Dr. Reagan's final report was attached to the letter. Mr. Fields was told "this is the only medical we have concerning this claimant".

Mr. Fields testified that the defendant insurance company, in the due course of business, received a copy of the notice and claim that was filed with the Board; that defendant's representatives, after notice that plaintiff was claiming injury to his head, neck and back, got in touch with him and "denied any medical coverage". He further stated that those representatives said "they" were not going to pay for plaintiff's "medical care"; that "they" refused to furnish any medical treatment whatsoever" and that such had been defendant's position since he started representing plaintiff in November, 1971.

Dr. Frank A. Luckay, of Corpus Christi, Texas, at the request of defendant, examined plaintiff on April 27, 1972. Defendant did not ask Dr. Luckay to offer plaintiff any treatment, but simply requested an examination and report. The doctor testified that he made a thorough orthopedic examination relating to plaintiff's complaints of pain in his neck and back. No symptoms which supported plaintiff's complaints were found, nor was any degenerative disc disease discovered. Dr. Luckay concluded that plaintiff was physically able to work. His findings and conclusions were duly reported to defendant. He did, however, testify that in view of plaintiff's complaint, if he were the treating doctor, he would want to see plaintiff several times before making a final diagnosis.

■■ It is clearly the law of this State that when a compensation insurance carrier has notice of an employee's injury, it has the duty to provide reasonable and necessary medical services to the injured

workman, and should it fail, neglect or refuse to do so within a reasonable time after receiving such notice, the employee may then seek and obtain medical care of his own choosing and the carrier will be liable for all reasonable and necessary medical attention. Section 7, Article 8306, Vernon's Ann.Civ.St.; Few v. Charter Oak Fire Insurance Company, 463 S.W.2d 424 (Tex.Sup. 1971); Texas Employers' Insurance Ass'n v. Chappell, 494 S.W.2d 159 (Tex.Sup. 1973). The only notice required by the statute to be given the carrier is notice of injury. It does not require specific notice of a claim for medical services, nor does it require a request therefor as a condition of the carrier's liability. Texas Employers' Insurance Ass'n v. Steadman, 415 S.W.2d 211 (Tex.Civ. App.—Amarillo 1967, writ ref'd n.r.e.); Standard Fire Insurance Company v. Simon, 474 S.W.2d 530 (Tex.Civ.App.—Dallas 1971, n.w.h.).

■■ Under the circumstances present in this case, plaintiff had the burden of proving and securing a jury finding that defendant refused, failed or neglected to furnish him medical services after September 15, 1971, when Dr. Reagan filed his final report with Defendant. Plaintiff met that burden. Defendant learned sometime between November 29, 1971 and January 10, 1972 that plaintiff was still complaining of an injury which resulted from the occurrence of September 3, 1971. Manifestly, from September 15, 1971 until some time preceding January 10, 1972, defendant was not given the opportunity to furnish medical aid because it did not have any notice of plaintiff's need therefor. There can be no failure, neglect or refusal to furnish medical treatment and services, within the meaning of the statute, unless there is notice of such need. Few v. Charter Oak Fire Insurance Company, supra.

The record reveals that medical services were furnished plaintiff by Dr. Hohf and the Hohf Clinic and Hospital from November 29, 1971 until October 18, 1972. The bill for such services amounted to $4,001.68; of that amount, $67.50 was for services furnished on November 29, 1971 and $10.00 was for services furnished on December 24, 1971; the remaining balance ($3,924.18) was for services furnished from January 8, 1972 until October 18, 1972. The bill for all such services, November 29, 1971, until October 18, 1972, was offered into evidence without objection.

The evidence demonstrates that defendant, at some time preceding January 10, 1972, had notice that plaintiff was claiming that he was still suffering from the accident which occurred on September 3, 1971, and that he was in need of medical attention. The evidence supports the jury's findings that the defendant failed to furnish (within a reasonable time) medical care reasonably required as a result of such injury, and that the reasonable cost of all the medical services furnished was $4,001.-68. The notice of plaintiff's claim which was received by defendant subsequent to the filing of the claim with the Industrial Accident Board and prior to the letter of January 10, 1972, written by defendant's representative to Mr. Fields, was a notice of need for medical attention and that the need was a natural and immediate consequence of the injury.

■ Defendant, by its point 23, contends that the judgment is excessive. It has requested that this Court reverse and remand the case with respect to the findings of total and permanent disability, and that we reverse and render that portion of the judgment relating to medical expenses. A Court of Civil Appeals does not have the power to reverse and remand a cause for a new trial because the verdict or judgment is excessive, except as a condition of a remittitur. Rule 440, Texas Rules of Civil Procedure; Carter v. Texarkana Bus Company, 156 Tex. 285, 295 S.W.2d 653 (1956).

The record conclusively shows that defendant did not have notice that plaintiff was in need of medical treatment on No-

vember 29, 1971, when plaintiff incurred costs therefor in the said amount of $67.-50; and, it can be reasonably inferred from the evidence that the defendant did not have such notice on December 24, 1971, when plaintiff incurred medical expenses in the said amount of $10.00. But, there is substantial evidence of probative value that' defendant did have such notice by January 8, 1972, when plaintiff was first admitted to the hospital. The aforesaid letter to Mr. Fields, dated January 10, 1972, clearly indicates that plaintiff's need for medical treatment was known to defendant sometime prior to that date. Therefore, it is our conclusion that the answer by the jury to Special Issue 15 on the reasonable cost expended by plaintiff for medical care furnished him as a result of his injury was excessive by the sum of $77.50. It is found by us that the evidence will and does support a jury finding of $3,924.18 for medical care and treatment furnished plaintiff subsequent to January 8, 1972.

Having found that the judgment is excessive by the amount of $77.50, it is accordingly ordered that a remittitur of $77.-50 be filed by plaintiff in this Court within ten days following the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of such remittitur and affirm the judgment; otherwise said judgment will be reversed in its entirety and the cause remanded for a new trial. Rule 440, T.R.C. P.; Southern Pacific Company v. Stanley, 473 S.W.2d 52 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.); S. S. Kresge Co. v. Prescott, 435 S.W.2d 203 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.); Coastal States Gas Producing Co. v. Locker, 436 S.W.2d 592 (Tex.Civ. App.—Houston 14th Dist., 1968, n.w.h.); Curtis v. Carey, 393 S.W.2d 185 (Tex.Civ. App.—Corpus Christi 1965, n.w.h.).

Defendant also contends that the trial court erred in not granting a mistrial on the grounds that the jury indicated by a note to the trial court that it was consider-

ing the effect of its answers and was attempting to reconcile its answers in an effort to return a verdict for total and permanent disability. The note read: "If (Issue No. 5) it has been answered 'permanent', we need clarification on Number 7 as to whether a person can be partially incapacitated permanently". The trial court, in the charge, instructed the jury: "A person cannot have both total and partial incapacity at the same time." Upon receipt of the communication, the court instructed the jury to refer to the above quoted instruction contained in the charge. In our opinion, this communication by the jury does not evidence, or even indicate, that the jury was considering the effect of their answers to the issues submitted. Defendant's point 24 cannot be sustained.

We have considered all of defendant's points of error, and with the exception of point 23 on excessiveness of the judgment, all are overruled.

The judgment of the trial court is affirmed on condition of remittitur.

## OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellee remit the amount of $77.50 as set forth in this opinion. The appellee, through his attorney, has filed a remittitur in the amount suggested and authorized in the opinion of this Court.

Therefore, in accordance with the opinion and judgment of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by appellee so that the amount of judgment against the defendant is reduced to the sum of $21,808.73, together with interest on said sum of money at the rate of 6% per annum from January 18, 1973, the date of rendition and entry of the judgment of the trial court. The judgment as reformed and reduced is apportioned $16,456.55 to appellee and $5,452.18 to his attorneys.

**342**

The judgment as herein reformed is hereby affirmed.

Appellant has filed a motion for rehearing, and it may file an amended or additional motion for rehearing within 15 days after the date this opinion is announced.