**TWIN CITY FIRE INSURANCE COM-
PANY, Appellant,**

v.

**Ordany Mae KING, Appellee.**

No. 16322.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 9, 1974.

Rehearing Denied June 6, 1974.

Wandel & Bousquet, R. D. McPherson, Houston, for appellant.

Roger Knight, Jr., Madisonville, Bond & Falco, James B. Bond, Joe S. Falco, Jr., Navasota, for appellee.

PEDEN, Justice.

This is a Workmen's Compensation case. After a jury trial, appellee, Ordany Mae King, was awarded compensation for total and permanent disability.

On January 16, 1971, while in the course and scope of her employment by Grimes Memorial Hospital in Navasota, Mrs. King turned, twisted her knee and fell to the floor. In April, 1971 she had surgery to repair the damage to her knee. During August she returned to work but required additional surgery in February, 1972. She has not been employed since the second surgery.

The appellant complains on appeal that counsel for the claimant made numerous improper statements and arguments to the jury, that the claimant failed to show good cause for late filing of her claim, that certain special issues should not have been submitted to the jury, that the trial court erred in admitting certain evidence and in calculating the claimant's compensation rate.

Mrs. King alleged that she injured her left knee, left leg, hip and back. She admitted that she did not tell a doctor that her back and hip were injured until sometime after May 9, 1973. She did not file her claim with the Industrial Accident Board until July 4, 1972.

The jury found by Special Issues that 1) Mrs. King sustained an accidental injury to her body while working for the Grimes Memorial Hospital; 2) the injury was not confined to her leg; 3) the injury was a producing cause of total incapacity; 4) the total incapacity was not produced solely by the injury to the leg; 5) the total incapacity was permanent; 6) beginning on January 16, 1971. Regarding the filing of the claim outside the six month period the jury found to Special Issues that 14) within the six months from the date of such injury Mrs. King believed that her claim for compensation had been filed with the Industrial Accident Board; 15) such belief caused Mrs. King's delay in filing, and 16) such belief was good cause for her delay in filing the claim.

It was uncontroverted that Mrs. King earned $1.75 per hour and worked a forty hour week for a weekly income of $70.00. If she was totally disabled as the jury found, the $42.00 per week figure used by the court to determine the lump sum benefit was proper.

Appellant, Twin City Fire Insurance Company, by its first four points of error complains that the conduct of Mrs. King's attorney during the trial prejudiced the jury against Twin City.

A statement of the general rules governing improper argument to the jury is found

in Utica Mutual Ins. Co. v. Jacobs, 483 S. W.2d 500, 503 (Tex.Civ.App.1972, no writ):

"The Supreme Court, in Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex.Sup.1968), defined improper jury argument as one of two types, curable or incurable. When the harmful effect of the argument can be eliminated by the trial judge's instruction to the jury to disregard what was just heard, it is curable. It is rendered harmless by the instruction. In such instance the objection must be promptly made, and an instruction requested or the error is waived. The second type of improper argument, incurable, is occasioned if it is so inflammatory that its harmful or acutely prejudicial nature could not be eliminated by such instructions. Failure to object in such case does not constitute waiver."

■ Not only must the argument be improper, it also "must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596, 599 (1953); Rules 434 and 503, Texas Rules of Civil Procedure.

■ In its first point of error Twin City complains that appellee's attorney informed the jury of the effect of its answer during voir dire by stating it was Twin City's contention that Mrs. King did not file a claim on time and therefore was not entitled to anything. Twin City's objection was sustained and the jury instructed to disregard any statement concerning good cause or its effects. We consider that this cured the error, since it was not so inflammatory as to be incurable. Further, we think the jury probably figured out the effect of the defense without help from counsel.

■ By its second point of error Twin City complains of the comment on voir dire that "In Madison County . . .

probably 60 percent of the people would feel they could not be fair to insurance companies, because they have not properly paid their claims." Twin City's objection was sustained and the jury was instructed to disregard the argument. Mrs. King's counsel was not speaking of Twin City directly but about the broad class of all insurance companies. This was improper jury argument, but it was cured by the court's instruction. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238, 243 (1942).

Point of Error No. 3 states that the conduct of Mrs. King's attorney during closing argument informed the jurors of the effect of their answers. Twin City complains of the "road map to Dallas" approach used by Mr. Knight, the claimant's attorney, in discussing Special Issue 2 (whether the injury was not confined to the leg) and Special Issue 4 (whether the incapacity was produced solely by the injury to the left leg). Appellant objected to the argument.

"Reasonable latitude must be allowed counsel in arguing a case submitted on special issues. If, as has been correctly said, he may advise the jury how in his opinion, from the evidence, the issues should be answered and may specifically say that certain issues should be answered yes and certain issues no . . . he may also earnestly urge or beg the jury to answer certain issues yes and others no, provided the argument is not so made as to inform the jury of the effect the answers will have upon the judgment to be rendered or as to cause the jury first to agree upon the result desired to be accomplished and then designedly make the answers so as to accomplish such result." Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S. W.2d 160, 164 (1937).

"Counsel for appellee had the right to request the jurors to answer special issues in a certain way and to state his opinion that justice would 'completely

flop in this case' if the issues were not so answered. The effect of such an argument was not to call upon the jury to answer in such a way that appellee might prevail." Gulf, Colorado & Santa Fe Ry. Co. v. Hampton, 358 S.W.2d 690, 692 (Tex.Civ.App.1962, writ ref., n. r. e.).

In our case counsel qualified his statement with the phrase "Under this evidence" and "Under this evidence by a preponderance of the evidence." His request for Mrs. King to receive justice was clearly based on his opinion of the evidence. The point is overruled.

Twin City urges in its fourth point of error that the cumulative effect of the misconduct of Mrs. King's attorney prejudiced the jury against Twin City. Appellant's twenty-sixth point is closely related. To determine whether a particular error or accumulation of errors was reasonably calculated to cause and probably did cause the rendition of an improper judgment, we examine the entire record of the case. The test as to improper jury argument is whether a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." Goforth v. Alvey, 153 Tex. 449, 271 S.W.2d 404 (1954); Utica Mutual Ins. Co. v. Jacobs, supra.

These are the principal complaints by Twin City of the conduct of Mrs. King's attorney:

1) Comments made on voir dire related in Points of Error # 1 and # 2; the appellant's objections were sustained and the jury was instructed to disregard;

2) Evidence was introduced as to the past compensation paid Mrs. King;

3) Showing that the claimant's husband is a janitor (low income);

4) The "road map to Dallas argument," which we have found not to be erroneous in Point of Error # 3;

5) Argument allegedly stating that Twin City and its counsel were telling half-truths, objection overruled;

6) Suggesting a disparity between the education of the attorneys for Mrs. King and Twin City, an implication of disparity in wealth between the parties. An objection on page 31 was overruled, but a later objection was sustained;

7) Several references throughout the trial to Mrs. King's attorneys as being from Grimes and Madison Counties while Twin City's attorney was from Houston and represented a big company;

8) Suggestions that there were things the rules won't allow appellee's attorney to tell the jury, objection sustained, no request for instructions;

9) Argument that he thinks Twin City's attorney really agrees with Mrs. King's position, objection overruled;

10) If Twin City had been fair there would be no lawsuit, objected to, but no ruling;

11) "Today's jurors are tomorrow's plaintiffs," objection sustained and jury instructed to disregard. This point of error presents a difficult decision.

These incidents, some of which were clearly improper, seem more damaging when considered together than when read in context in the record. We have concluded that we cannot say the trial court erred in overruling the appellant's motion for new trial because we do not believe that these matters probably caused the rendition of an improper judgment.

As to the second item in the list of acts complained of, the trial judge instructed the jury not to consider testimony concerning any amounts paid to the plaintiff by the insurance carrier. We hold that this cured the harmful effect of the evidence, if there was any harm under the facts in this case. The fact that payments in some amount had

been made was admissible on the issue of good cause for late filing of the claim. This matter was also the subject of appellant's fifth point.

■ Not all of the matters complained about were improper. Some were obviously positions of advocacy and would not be calculated to have influenced the jury's verdict. Others, such as frequent references to out-of-town opposing counsel and local claimant's counsel, and the observation that "today's jurors are tomorrow's plaintiffs" are unfair efforts to prejudice a jury and should be firmly dealt with by the trial judge.

Mrs. King contends in her first counterpoint that Twin City should be limited in this appeal to those points raised in its original motion for new trial (points of error 1 through 5). The judgment was signed on November 9, 1973, the original motion for new trial was filed November 16, 1973 and was overruled on November 20, 1973. Twin City's First Amended Motion for New Trial was filed November 30, 1973. On December 6, 1973 the order overruling the original Motion for New Trial was set aside and the First Amended Motion for New Trial was considered and overruled.

■ Since all this transpired within 30 days of the signing of the judgment, the trial court had the power to vacate these orders made during that period of time. Rule 329b(5), Texas Rules of Civil Procedure; Dallas Storage & Warehouse Co. v. Taylor, 124 Tex. 315, 77 S.W.2d 1031, 1035 (1934); Union City Transfer v. Kenna, 210 S.W.2d 431, 433 (Tex.Civ.App.1948, no writ). We will consider all of the appellant's points of error.

■ Twin City contends in its Sixth Point of Error that the trial court erred in admitting a hearsay telephone conversation with an employee of Twin City regarding the termination of compensation payments and the sending of $2100 to Mrs. King as a final compensation payment. This con-

versation was not hearsay. It was not offered for the purpose of proving the truth of the employee's statement, but was offered to show that a telephone conversation occurred whereby Mrs. King learned that she would not receive further compensation payments. The significance of the conversation was to show evidence of Mrs. King's good cause for late filing of her claim.

Twin City's Points of Error Nos. 7–21 begin "The trial court erred in submitting special issue _____ of the Court's charge to the jury, to overrule the defendant's objection thereto, to permit the jury to answer, to receive and to file such answer and render its judgment based thereon . . ." Some purport to be great weight points.

In point 9, a great weight point, the appellant also complained that the court failed to grant its motion for new trial on its complaint about Issue No. 2. The assignments of error in the defendant's amended motion for new trial complaining of the submission of Special Issues 2 and 4 complain only that it "was error for the trial court to submit those issues to the jury, to overrule defendant's objection thereto, to permit the jury to answer, to receive and file such answer and/or to render its judgment based thereon . . ." because there was no evidence, insufficient evidence and the finding is against the great weight of the evidence.

> "Under the provisions of Rule 301, Texas Rules of Civil Procedure, the trial court is authorized, upon motion and notice, to 'disregard any Special Issue Jury Finding that has no support in the evidence.' The court may not, however, properly refuse to submit an issue or disregard the jury's answer thereto merely because the evidence is factually insufficient to support the same." Garza v. Alviar, 395 S.W.2d 821 (Tex.1965).

These points of error raise only the legal sufficiency of the evidence to support Special Issues 2, 4, 14, 15 and 16; they are no

evidence points. We will deal with Special Issues 14, 15 and 16 later.

As to the complaints about the trial court's charge, the record of this case shows that the defendant company's objections to the court's charge are contained only in the transcript. The instrument bearing these objections states that they "were dictated before the Court in open Court and overruled by the Court and under stipulation and agreement made a part of the record and considered written, typed and filed before the reading of the Main Charge of the Court to the Jury." The instrument bears the date of October 16, 1973 but its file mark is December 17, 1973 (after final judgment was entered).

It does not have the official signature of the trial judge endorsed thereon in compliance with Rule 272, Texas R.C.P. In absence of a compliance with this rule, and since they do not appear in a statement of facts signed by the judge, appellant's objections were not properly preserved for appellate review, and points concerning them cannot be considered by us. Mergele v. Houston, 436 S.W.2d 951 (Tex.Civ.App.1968, writ ref. n. r. e.).

Special Issues 2 and 4 involve the issues of whether the claimant's injury was confined to her leg and whether her incapacity was produced solely by the injury to her leg. The jury found both issues in favor of Mrs. King; that the injury and incapacity were not so confined. On these no evidence points we are to consider and will review the evidence favorable to Mrs. King. She testified that when she fell on her back she injured her leg, back and hip, and she had hard pain in those places. That these injuries have continued and have not improved. (Two years and nine months elapsed between the injury and the trial.) She reached the tenth grade in school. The only jobs she has ever had were chopping cotton, washing dishes and the job she had at the Grimes Memorial Hospital, where she was working when she fell and got hurt. She had worked there for nine years, first as a maid and later as a cook.

After the first operation she couldn't work for about seven months but she worked from August of 1971 to February 4, 1972. She said her back, leg and hip kept hurting all that time and she couldn't do the work. In her second operation they removed her kneecap. It was performed later in the month of February, 1972 and she hasn't worked since then; she said she can't do the work because she can't stand long and to do it "you have to get down on your knees and do all that" and she can't do that. She can't stand long; she hurts all the time until she can't do the work. She couldn't get a job that required her to do lifting, bending or stooping. The pain in her back and leg have gotten worse. She doesn't know of any job she can get anywhere. She would be able to work if she could find a job where she could sit down all day and where she could work when she felt like it, but she knows of no such available job. She hasn't had any training to do any kind of work except chopping cotton and working as a maid or a cook at the hospital. She had thought that when her knee quit hurting her back and hip would, too. They have gotten worse. She uses a heating pad on her back, hip and knee.

The claimant admitted on cross-examination that the first time she told a doctor that her back hurt was in September of 1972, after her deposition was taken. He said it was probably because she was pregnant. No doctor has ever treated her back or hip. She said she told her husband about her pain in her back and hip. She has hard pain in her back and hip all the time now.

Mrs. Monk testified that she was the claimant's supervisor. She related that Mrs. King made an honest effort to return to work after her first operation but it was apparent that she could not do the work.

"The jury had the right to believe plaintiff's testimony, and believing it,

had a right to find him disabled as they did. . . . There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered an injury that caused permanent and total disability. . . . The issue as to disability may be established by the plaintiff alone, and this is true even though his testimony may be contradicted by a medical witness. . . . The jury was the sole judge of the credibility of the witness, and weight to be given the testimony." Insurance Company of Texas v. Anderson, 272 S.W.2d 772, 774 (Tex.Civ.App.1954, writ ref., n. r. e.).

Also Texas Employee's Ins. Ass'n v. Hamilton, 430 S.W.2d 285, 288 (Tex.Civ.App. 1968, writ ref. n. r. e.); Fireman's Fund Ins. Co. v. Martinez, 387 S.W.2d 443, 448 (Tex.Civ.App.1965, writ ref. n. r. e.). The evidence is legally sufficient to show that neither the injury nor the incapacity was confined to the leg.

Points of Error 13–21 refer to Special Issues 14–16 dealing with good cause for not filing her claim within six months after the accident. Mrs. King testified that she was told by members of the hospital staff, Mrs. Keeling and Mrs. Monk, that her claim would be taken care of. Mrs. Keeling and Mrs. Monk confirmed that they gave Mrs. King such assurances. Further, Mrs. King received compensation benefits until June 24, 1972.

The test for good cause is found in Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, 372 (1948):

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion."

Reliance on statements of employers or their agents, servants or employees may be good cause for a delayed filing. Moronko v. Consolidated Mutual Ins. Co., 435 S.W.2d 846 (Tex.1968); Northwestern Nat. Ins. Co. v. Kirchoff, 427 S.W.2d 638 (Tex.Civ.App.1968, no writ). The evidence supports the jury findings of good cause from date of injury until June 24, 1972 when Mrs. King learned that the insurance company intended to cease making payments to her and consulted a lawyer. This left about 10 days for the lawyers to investigate the case and file her claim. There is no evidence that either she or her attorneys were aware that a claim had not been filed. Her husband testified that he still thought one had been filed. We cannot say as a matter of law that Mrs. King did not exercise ordinary care in failing to file her claim during any period of time between January 16, 1972 and July 4, 1972. Her standard of conduct was judged by the jury and found diligent. Moronko v. Consolidated Mutual Ins. Co., supra.

Points of Error 22–24 may be overruled since the evidence was uncontroverted that Mrs. King worked at least 210 days of the year immediately preceding her injury; that she earned $1.75 per hour, working a forty hour week for an average weekly wage of $70.00 per week.

Twin City in its 25th point of error claims error in the trial court's finding as a fact, on its own motion, that Mrs. King's compensation rate would be $42.00 per week because such finding ignores the statutory procedure for determining wage earning capacity. Twin City was served with this written interrogatory which, with its answer, was introduced in evidence:

"State the insurance company's position in dollars and cents as to what

amount Ordany Mae King's average weekly wage under the Workman's Compensation Act was as of the date alleged?

"$70."

██ This testimony serves as an uncontroverted judicial admission of the average weekly wage. The amount of compensation is 60% of the average weekly wage and is $42.00. Tex.Rev.Stat.Ann. 8306, § 10 (1969), Vernon's Ann.Civ.St.

Our disposition of Point of Error 4 is also dispositive of Point of Error 26.

Twin City's last point of error is that the trial court erred in permitting the plaintiff's attorney to read into evidence from Dr. Coleman's deposition his opinion that the claimant could not obtain or retain employment 1) because he had stated he could not qualify as an expert to give such answers and 2) because such testimony was elicited after he had stated that he knew only of injuries to her leg and that in his opinion her injuries were so confined.

██ As to the first of these grounds, the doctor apparently changed his mind to some extent and gave an opinion. We cannot say the trial judge abused his discretion in admitting the opinion evidence despite the doctor's doubts about his qualification as an expert.

As to the second ground stated in the point, we will review the testimony (given by deposition) of Dr. L. W. Coleman on this matter. He said that when he first operated on the claimant he excised the medial meniscus and trimmed away some softened cartilage in her left knee. Later, he removed her left kneecap. He didn't recall her having mentioned any pain or discomfort in her back or hip, but he had been rather preoccupied with her knee. He hasn't done pre-employment physical examinations as an orthopedic surgeon. When asked if he would pass the claimant to work he said he didn't think he could

answer the question and tell the whole truth but that he would state that he didn't think she could, at this time, handle employment that would require her to stand for any length of time, because of the pain. She could do a job that allowed her to sit down all day long. He regards her condition as permanent. He doesn't think it likely that she now has complaints of pain in her hip and low back area. Her pain is, primarily, limited to the knee, and it would be uncommon for it to extend as far as her hip.

On cross-examination by appellant's attorney Dr. Coleman testified that he couldn't recall the claimant's having complained about her hip or back. She may possibly have said her back was hurting and he could have overlooked that; as far as he was concerned, it was not a matter of profound·importance. She has about a 45 to 50 percent permanent partial incapacity in terms of her left leg. He is not aware of her having any other physical disabilities attributable to this accident.

On re-direct examination:

"Q Doctor, now, you said, her leg, there was a 40 to 50 percent disability there. But, when you consider her condition in relation to her entire body and to her ability to go out and get and keep a job that requires her to do walking, bending, lifting, and squatting, is that disability any different, sir?

"BY MR. McPHERSON: (OBJECTION)

"I object, at this point, for the record's sake, please, I object on the grounds that whether or not there is any disability, in addition to the leg, caused solely by the leg as to her ability to attain employment is not before this Court, it's not before this Jury based on this doctor's testimony, where the doctor has already testified that all he knows of is an injury to her leg.

"BY THE COURT:

"Overruled.

" . . . .

"A I think I can answer your question. If she were required to do a job that carried any significant amount of walking, then, she would not be able to render a satisfactory service in that job. She would not be able to, probably, get the job—

"BY MR. McPHERSON: (OBJECTION)

"—Your Honor, I would object to this testimony, he has already elicited a detailed job description, he said he does not do pre-employment physicals. There is simply no issue before this Jury to support this doctor's answers.

"BY THE COURT:

"Overruled.

(Mr. Knight continuing reading.)

"If she were required to do a job that carried any significant amount of walking, then, she would not be able to render a satisfactory service in that job. She would not be able to, probably, get the job in the first place, and, if she were able to obtain the job, she probably would not be able to keep it. However, I would be the very first to say, if she were able to find a job in which she could sit all day, she could probably do that job forever. But, it's a simple matter. She asked me yesterday, and I told her she needed to find a job where she could sit down, and she said, 'Doctor, where is I gonna find one?'

"Q You mentioned, walking, what about standing?

"A Standing or walking. The function of this joint as a weight-bearing unit is the thing that's disabled.

"Q What percent total disability—or is this disability a total disability?

"BY MR. McPHERSON: (OBJECTION)

"Your Honor. I would object, again, this answer is again based on testimony in which the doctor has said that, one, he doesn't know, two, there has been no proper predicate laid, and it's prejudicial to my client and I object to it.

"BY THE COURT:

"Overruled.

"BY MR. KNIGHT:

"The answer is—

(Mr. Knight continuing reading.)

"A It would be near total with respect to that particular patient. To try to separate that from the other functions of the knee, such as bending and so forth, it's awful hard to quantitate it."

■ It appears that the doctor was testifying about his patient's left knee and leg. It was not clear, however, whether his earlier testimony as to percentage of disability was in reference to functional disability or disability to work. Since the claimant did not lose her leg or all of its use, she was entitled to show the extent to which the injury impaired her ability to work.

Mrs. King claimed a general injury, while the carrier asserted a specific injury, to her left foot or leg; one of the controlling issues made by the pleadings and proof was whether the injury was general or specific. Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S.W.2d 312 (1943).

Therefore testimony was admissible to show the extent of the injury and whether disability to the leg would "impair the future usefulness or occupational opportuni-

**380**

ties" of the claimant.   Art. 8306, § 12, V. T.C.S.

"Although a member may possess some utility as a part of the body, if its condition be such as to prevent the workman from procuring and retaining employment requiring the use of the injured member, it may be said that a total loss of the use of the member has taken place."   Travelers Insurance Co. v. Seabolt, 361 S.W.2d 204 (Tex.1962).

The questions complained about did not ask about loss of use of the leg.   They seemed to be seeking testimony that the leg injury alone was totally disabling, but we hold that the trial court was entitled to conclude that the thrust of the doctor's testimony was that he was aware only of the knee injury and that it disabled her only to the extent that she was unable to obtain and retain employment that required her to do a significant amount of walking or standing.   No limiting instruction was requested.   We conclude that the trial judge did not abuse his discretion in admitting the testimony in question, so we overrule the appellant's last point of error.

Affirmed.