**EMPLOYERS REINSURANCE CORPORATION, Appellant,**

v.

**Wallace C. RYNE et al., Appellees.**

**No. 16559.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 20, 1975.

C. E. Nadeau, J. M. Worsham, Houston, for appellant.

Stevens F. Mafrige, George A. Sellnau, Houston, for appellees.

PEDEN, Justice.

After a trial to the court, appellee Wallace C. Ryne was awarded workmen's compensation for sixteen weeks' total disability followed by permanent partial disability, hospital costs and a joint judgment with Dr. Miguel A. Soler for medical expenses. The trial court filed findings of fact and conclusions of law. We sustain the trial court's findings that the claimant showed good cause for his failure to timely file his compensation claim and showed that he was partially incapacitated after March 31, 1972, but we agree with appellant that the claimant did not show that appellant failed to timely furnish medical care.

Mr. Ryne's claim is based on a back injury incurred while working for Shell Oil Co. as a pipefitter. He filed his claim with the Industrial Accident Board about five weeks more than six months after his injury, but the Board allowed it. Employers Reinsurance Corporation, Shell Oil Co.'s compensation carrier, filed this suit to set aside the Board's award and Ryne filed a cross-action.

Employers' first two points of error are that the trial court erred in finding that Ryne had good cause for failing to timely file his claim with the Board 1) because there is no evidence to support such finding and 2) because the evidence is insufficient to support it.

Art. 8307, § 4a, Vernon's Texas Civil Statutes, provides in part:

"  .  .  no proceeding for compensation for injury under this law shall be maintained

"  .  .  unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury or the first distinct manifestation of an occupational disease; or, in case of death of the employee or in the event of his physical or mental incapacity, within six months after death or the removal of such physical or mental incapacity. For *good cause* the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board."

Whether good cause exists for not timely filing a compensation claim is ordinarily a question of fact which the claimant must allege and prove. *Williamson v. Texas Indemnity Insurance Co.*, 127 Tex. 71, 90 S.W.2d 1088 (1936).

"The term 'good cause' for not filing a claim for compensation is not defined in the statute, but it has been uniformly held by the courts of this state that the test for its existence is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same

or similar circumstances. Consequently, whether he has used the degree of diligence required is ordinarily a question of fact to be determined by the jury or the trier of facts. It may be determined against the claimant as a matter of law only when the evidence, construed most favorably for the claimant, admits no other reasonable conclusion." *Hawkins v. Safety Casualty Co.*, 146 Tex. 381, 207 S.W.2d 370 (1948).

■ In deciding "no evidence" points this court considers only the evidence and the inferences tending to support the findings and disregards all evidence and inferences to the contrary. *Commercial Standard Ins. Co. v. Allred*, 413 S.W.2d 910 (Tex.1967). In passing on factual sufficiency points, we consider all the evidence. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Ryne has two years of college credits. He was hurt on June 23, 1971, and reported the injury to a company nurse the next day. He worked until July 8, when he told Mr. Davis, a senior analyst who handles compensation claims for Shell, that he was going to see his family doctor. Ryne had his doctor perform back surgery and called Davis on September 3, 1971, to ask why $49 per week was being withheld from his pay.

Ryne gave this testimony on direct examination:

"Q. All right. Now, Mr. Ryne, can you tell this Court why you did not file your claim earlier?

"A. Well, when I had the conversation with Mr. Davis, me wondering why they were taking that money out of my check, he said, 'Well, this is an undecided claim, and since it is, we will have to wait and decide whether they are going to pay you are not. I assume we will get on it when they do.' He said, 'You don't have to do anything, Mr. Ryne; all your paperwork will be taken care of.'

"Q. Did he specifically tell you that he was going to take care of the paper-

work that was necessary to process your claim?

"A. He certainly did."

On cross-examination Ryne related:

"Q. And you have stated that you relied on Mr. Davis to do the paperwork, is that right?

"A. I stated that he told me he would do the paperwork and I certainly relied on it. I believe what the man said would be the truth.

"          .    .    .

"A. Did he ever tell you that I am going to file your claim for you?

"A. He said he would take care of all the necessary paperwork, this I naturally thought included the claim."

Ryne related that later, as a result of receiving advice of friends from the union, he decided he needed to file his claim. He filed it on January 31, 1972.

Mr. Davis corroborated Ryne's testimony as to the withholding of money because it was referred to as a disputed claim.

■ We overrule the appellant's first point. There is some evidence of good cause for late filing in Ryne's testimony that he relied on a statement by a representative of his employer that it would be taken care of. *Allstate Insurance Co. v. Godwin*, 426 S.W.2d 652 (Tex.Civ.App.1968, no writ); *Gibbs v. T. E. I. A.*, 378 S.W.2d 349 (Tex.Civ.App.1964, writ ref. n. r. e.); *Northwestern National Insurance Co. v. Kirchoff*, 427 S.W.2d 638 (Tex.Civ.App.1968, no writ); *Twin City Fire Insur. Co. v. King*, 510 S.W.2d 370 (Tex.Civ.App.1974, writ ref. n. r. e.).

In considering the appellant's second point we note that Davis testified that he did not represent to Ryne that he would file the claim for him, and there is other evidence in support of the appellant's second point. Ryne didn't ask Davis if a claim had been filed. Further, Ryne said he didn't think Davis treated him fairly when he was

in the hospital. And Ryne later asked an attorney to tell Davis to quit calling him, but there is no evidence that Ryne employed the attorney to represent him before the Board or discussed filing a claim.

We conclude that there was sufficient evidence to support the trial court's finding of good cause.

Employers' third and fourth points of error are that the trial court erred in finding that it failed and neglected to furnish within a reasonable time medical care reasonably required as a result of Ryne's injury 3) because there is no evidence to support such finding and 4) because the evidence is insufficient to support it.

■ Art. 8306, Sec. 7, V.T.C.S. (later amended), made these provisions for recovery of medical expenses:

> ". . . If the association fails to so furnish reasonable medical aid, hospital services, nursing, chiropractic services and medicines as and when needed after notice of the injury to the association or subscriber, the injured employee may provide said medical aid . . . at the cost and expense of the association. The employee shall not be entitled to recover any amount, expended or incurred by him for said medical aid, . . ., nor shall any person who supplied the same be entitled to recover of the association therefor, unless the association or subscriber shall have had notice of the injury and shall have refused, failed or neglected to furnish it or them within a reasonable time . . ."

The employee need only give notice of injury for the insurance carrier to be liable for medical services under this provision. He need not request the insurance carrier to furnish them. *Texas Employer's Insurance Association v. Steadman*, 415 S.W.2d 211 (Tex.Civ.App.1967, writ ref. n. r. e.).

We review Ryne's testimony. He injured himself on or about June 24, 1971, on a ladder but thought it was only a muscle pull in his right hip. He was still in pain the following day, so he reported the incident to Mrs. Heinz, a nurse at the company hospital. She told him to take a hot bath when he got home. He continued to work through July 7. A foreman must have seen him one time when his leg gave way but didn't ask him how he got hurt or offer to send him to a doctor. On July 8 Ryne's pain was worse, so he made an appointment with his family physician, Dr. Lee. He also talked to Davis by telephone. Davis offered to send a taxi for him and send him to Dr. Heinz, the company physician, but Ryne declined the offer, saying that he had already made an appointment with Dr. Lee but also because he didn't like the way Dr. Heinz had examined him for a hernia. Ryne kept that appointment and was admitted to the hospital, where he was given several different treatments. He failed to respond to them, so Dr. Soler, an orthopedic surgeon and a defendant in this suit, was called in. He gave Ryne a physical examination and a myelogram, then decided to perform a laminectomy. On the day before the operation was scheduled, Davis asked Ryne by telephone to get a release and see Dr. Heinz. Ryne agreed to get one from Dr. Lee and to see Dr. Heinz, but Davis said Dr. Heinz would not examine him unless he checked out of the hospital and dismissed both of his doctors. Davis also said the myelogram would have to be repeated. Ryne was scheduled for the operation the following day after talking to Davis.

■ We sustain the appellant's third point. There is no failure, neglect, or refusal to furnish medical treatment and services, within the meaning of the statute, unless there is notice of such need. *Highlands Underwriters Insurance Co. v. Carabajal*, 503 S.W.2d 336 (Tex.Civ.App.1973, no writ), citing *Few v. Charter Oak Fire Insurance Co.*, 463 S.W.2d 424 (Tex.1971). Ryne's testimony disproves the finding on this issue: after he told the nurse he had hurt his hip he continued to work, and when he next told a company representative that he was in pain, some two weeks later, the

representative offered to send a taxi to take him to the company's doctor. As a matter of law, under this evidence, the carrier did not refuse, fail or neglect to furnish medical aid within a reasonable time.

Employer's fifth and sixth points of error are that the trial court erred in finding that Ryne had any partial incapacity after March 31, 1972, resulting from the injury he allegedly sustained on June 23, 1971, 5) because there is no evidence to .....port such finding and 6) because the evidence is insufficient to support it.

Appellant points out that Ryne is earning more money after the operation than he did before it, that he is considered to be a very good pipefitter, has advanced to journeyman, and that the doctors attending him no longer restrict his work. Appellant contends that his incapacity was temporary and did not exist past March 31, 1972.

Appellee agrees it is true that Mr. Ryne makes more money now than before the accident but points out that the issue is wage earning capacity.

Dr. Soler testified that Ryne would suffer permanent disability after an operation of this type. There is evidence that a pipefitter's job involves manual labor, a lot of lifting, and working on pipe while in awkward positions. Ryne testified that he cannot pick up the same weight load as before the injury. He experiences pain during work and is handicapped somewhat in performing it. Jerry Pratka testified that he generally works with Ryne as his teammate and has noticed that Ryne cannot lift or "tighten up" like he used to. It is undisputed, however, that Mr. Ryne is working overtime since his return to work.

There is no fixed rule of evidence by which a claimant is required to establish the fact that he has suffered disability. If his capacity and efficiency to work are not the same as before the injury he is entitled to compensation regardless of the fact that he was paid, after the injury, as much or more than he earned prior to or at the time of the injury. *Texas Employer's Insurance Association v. Evers*, 242 S.W.2d 906 (Tex. Civ.App.1951, writ ref. n. r. e.).

The judgment of the trial court is reformed to deduct from it the recovery by Mr. Ryne of $2,583 for hospitalization costs and the joint recovery by Mr. Ryne and Dr. Soler of $500 for medical expenses, plus interest on such sums. As so reformed, the judgment is affirmed.